Joseph Doria, Plaintiff-Appellant, *v.* Patrick Costello *et al.*,
Defendants-Appellees.

(No. 58471;

First District (2nd Division)—September 3, 1974.

Roland C. Upton, George F. Witteman, and Morrill, Koutsky, Klomann & Chuhak, all of Chicago (Philip J. McGuire, of counsel), for appellant.

Epton & Druth, Ltd., of Chicago (Bernard E. Epton, Donald Segal, and Brian M. Waldron, of counsel), for appellees.

Mr. JUSTICE DOWNING delivered the opinion of the court:

Plaintiff brought an action for personal injuries suffered when he was struck by an auto driven by defendant Patrick Costello, a policeman on duty in the defendant Village of Markham. The jury returned a verdict in favor of the defendants.

Plaintiff now prosecutes this appeal presenting the following issues for review: (1) whether the trial court erred in denying plaintiff's motion to strike certain testimony; (2) whether the trial court erred in submitting to the jury instructions pertaining to intoxication; and (3) whether the trial court erred in the giving and refusing of other instructions.

During the evening of December 23, 1967, defendant Costello (then employed as a police officer with the Village of Markham) received a radio communication directing him to pick up an automobile in a shopping center and drive it to the owner's home. The shopping center is located on the east side of Kedzie Avenue and extends from 159th Street on the north to 161st Street on the south. Costello picked up the car (a dark-colored Ford), exited the parking lot at a point approximately ¼-block south of 160th Street and proceeded northward on Kedzie. Realizing that he should be proceeding southwest of the shopping center, Costello made a left turn into 160th Street so as to go in a westerly direction. As he made this turn, the defendant noticed that the pavement was rough, then continued around the block. When he passed the intersection once again, he found plaintiff sitting on the road's shoulder approximately 5 feet south of 160th Street and 4 feet west of Kedzie in the shoulder and culvert. In response to Costello's inquiry, plaintiff stated that he was sitting there because he had been struck by a late model green or dark-colored Ford. After delivering the

car, Costello, accompanied by his partner, Officer Casper, returned to 160th and Kedzie where they found plaintiff and one other man.

While Costello acknowledged at the trial that he had struck plaintiff with the Ford,[1] he stated that as he made the left-hand turn into 160th Street, he never saw plaintiff at the intersection. He testified that there were no sidewalks on the west side of Kedzie, no overhead street lights or traffic signals at the intersection of 160th and Kedzie, although the shopping center's parking lot was equipped with lights.

The plaintiff testified that on the date in question he operated a gasoline service station located at 159th Street and Central Park. After work at approximately 7 P.M., plaintiff went with his wife and a friend, Bill Horman, to a club across the street from the gas station, where he consumed four or five 6-ounce glasses of beer, leaving at approximately 8:30 P.M., his wife and friend having left before him. From the club plaintiff, accompanied by Les Clark and Ed Gruhlke, proceeded to a liquor store where plaintiff drank one more beer and then left at 9:20 or 9:30 P.M. to walk home. Plaintiff began to walk to his home at 16140 South Kedzie Avenue (about one-quarter mile from the liquor store) by going in an eastward direction down 159th Street to Kedzie Avenue where he turned and proceeded in a southerly direction down Kedzie Avenue, and as he approached 160th Street and Kedzie, plaintiff noticed an oncoming car approximately three-quarters of a block away. He continued walking and, while crossing 160th Street, looked up again and saw that "there were two lights right on top of me." At this point plaintiff was on the road's shoulder, 4 to 5 feet south of the paved portion of 160th Street and 3 to 4 feet from the west edge of Kedzie. Realizing that the car was going to hit him, plaintiff tried "to roll away from it." As the left side of plaintiff's body came in contact with the left side of the auto, he grabbed the rear view mirror and broke it off the car, then flipped into the air and came down on his back and head. Plaintiff stated that he lay stunned but saw taillights go in a westerly direction down 160th Street. He next remembered Officer Casper and Costello arriving on the scene asking him if he had been hit by a car, and he acknowledged that he had been, indicating the direction in which the car headed, and the officers then pursued it. Plaintiff's employee, Larry Engle, then came by the scene and drove plaintiff home.

Asked to describe his condition at that time, plaintiff replied "terrible shock" and stated that he felt pain in every part of his body, particularly his neck and lower back.

---

[1] Costello, called by the plaintiff as an adverse witness, was asked if he had struck plaintiff and responded, "It appears that way."

On cross-examination plaintiff stated that he had nothing to eat at the club but that he had a late lunch at 4 or 4:30 that afternoon; that the weather was cold and frosty with a very slight accumulation of snow; and that he had no difficulty walking other than just watching so as not to slip.

Edward Gruhlke stated that he saw plaintiff on the night in question at the club where plaintiff drank four or five beers. Asked his opinion by plaintiff's attorney concerning the condition of plaintiff's sobriety when he left the club, Gruhlke stated Doria "was all right as far as I know." The witness then accompanied plaintiff to the store where he stated Doria had one or two beers. Questioned regarding the condition of plaintiff's sobriety when he left the liquor store, the witness replied that plaintiff was "All right, he was sober as far as I could see."

Lawrence Engle had been employed in plaintiff's gas station during 1967. On December 23, 1967, he and plaintiff's son locked up the station around 10 P.M. and, after he had driven plaintiff's son home, the witness drove down 160th Street toward Kedzie when he saw "headlights come flying down the street from the direction of Kedzie." When the witness came to 160th Street and Kedzie he stopped, noticed plaintiff on his right on the road's shoulder (south of 160th Street), exited from his car, and helped plaintiff up.

Asked by plaintiff's attorney whether he noticed any odor of alcohol about the plaintiff, Engle responded that he did not and, when asked whether plaintiff was inebriated, the witness stated: "In my opinion he wasn't." Engle further testified that, while riding to plaintiff's home, he noticed no odor of alcohol about him and when asked if plaintiff appeared sober to him, the witness replied: "Yes, he was shook up a lot."

Beverly Doria, plaintiff's wife, testified that on the evening in question she dropped her son off at the gas station, met her husband, and both proceeded across the street to the club; that she consumed a soft drink, left the club before her husband so as to do some shopping, and next saw him when Lawrence Engle brought him home. She testified that plaintiff could not stand or walk without someone helping him, and, when asked by counsel for plaintiff whether he was drunk or not, she replied: "No, he most certainly was not."

Mrs. Doria drove plaintiff to the Markham Police Station and left him in the car while she entered the station where she turned in the mirror her husband had pulled off the car. Describing plaintiff's physical position in the car, she stated: "He was slumped, he couldn't sit up." Inside the station the witness spoke to Sergeant Kalivoda who then went out to her car with her. In talking to the sergeant plaintiff said that he was stiff and sore and wanted to go home.

On cross-examination, when questioned as to whether she observed any smell of liquor about the plaintiff, Mrs. Doria stated: "No, I did not." She further testified that she was familiar with the smell of beer, did not smell beer on her husband that evening and acknowledged that her husband was in a dazed condition.

James Kalivoda, called by the defendants, was a sergeant with the Markham Police Department at the time plaintiff incurred his injuries. He testified that Officers Costello and Casper had called to advise him of the accident and that Mrs. Doria came to the station at about 10:30 or 11 P.M. requesting the witness to persuade her husband to go to the hospital. Kalivoda did go out to the car to converse with plaintiff, asked him to go to the hospital, but plaintiff said he was alright and did not have to go to the hospital.

Having observed the plaintiff's physical appearance, Kalivoda testified: "He seemed fairly happy—carefree" and that, although it was dark and hard to see plaintiff's face, "He was smiling." The witness further testified that during the course of his association with the Markham Police Department, he had had occasion to see intoxicated people. Asked his opinion as to plaintiff's condition that evening with regard to intoxication, the witness stated: "As I put down in my report, I thought he *was under the influence*" and based his opinion on the "fact that he had a few drinks, the expression on his face. He seemed carefree."

On cross-examination Kalivoda testified that, as he spoke to plaintiff, he stood several feet from plaintiff who was seated in the car; that at no time during their conversation did plaintiff get out from the vehicle; and that he conducted none of the usual sobriety tests on the plaintiff.

## I.

Plaintiff first contends that the trial court committed reversible error when it refused to strike Kalivoda's testimony that plaintiff was "under the influence" and when it submitted to the jury instructions pertaining to intoxication.

In his complaint plaintiff alleged the exercise of due care and caution on his part and each defendant denied that allegation. Thus the parties joined issue on the conduct of the plaintiff.

■■ Since a plaintiff's intoxication may defeat his recovery for negligence depending upon the extent to which it affects the care that he takes for his own safety (*Patarozzi v. Prairie States Oil & Grease Co.* (1966), 71 Ill.App.2d 155, 158, 218 N.E.2d 113), evidence of a plaintiff's intoxication is admissible as a circumstance to be weighed by the jury in its determination of the issue of due care. *French v. City of Springfield*

(1972), 5 Ill.App.3d 368, 376, 283 N.E.2d 18; *Patarozzi v. Prairie States Oil & Grease Co., supra.*

Ordinarily in a case of this nature, the defendant would bear the burden of proof upon this issue. The record in this case clearly demonstrates though that, probably as a matter of trial strategy, it was plaintiff's counsel who introduced the issue of intoxication by questioning the plaintiff, Edward Gruhlke, Lawrence Engle, and Mrs. Doria concerning plaintiff's consumption of liquor on the evening of the accident and by eliciting the opinion of the latter three witnesses as to plaintiff's sobriety or lack of it.

In an effort to challenge this evidence as well as bear their burden of proof on the issue of due care, defendants offered Kalivoda's testimony that, having been a member of the Markham Police Force for 4 years and having had occasion to see intoxicated persons, the plaintiff was, in his opinion, "under the influence." Plaintiff moved to have this testimony stricken on the ground that the witness did not have sufficient opportunity to observe plaintiff's physical condition and thus was not qualified to offer an opinion as to his sobriety but the trial court denied the motion.

■■■ The rule is well established that a non-expert may testify as to his opinion, based upon experience and observation, whether or not a person was intoxicated (*Watson v. Fischbach* (1972), 6 Ill.App.3d 166, 171, 284 N.E.2d 720; *Suppe v. Sako* (1941), 311 Ill.App. 459, 466, 36 N.E.2d 603). As stated by our supreme court in *Dimick v. Downs* (1876), 82 Ill. 570, 572:

> "Whether a person is nervous and excited, or calm, or whether drunk or sober, are facts patent to the observation of all, and their comprehension requires no peculiar scientific knowledge."

In the instant case, Kalivoda testified that he had had occasion to observe intoxicated persons during his experience as a policeman and that he had observed plaintiff's physical appearance on the evening of the accident. In light of the above-quoted authority, Kalivoda was qualified to offer his opinion as to plaintiff's sobriety or lack of it. Accordingly, we conclude that the circumstances surrounding the witness' observation of the plaintiff did not affect the admissibility of that testimony. Rather, such was a factor to be considered by the jury in determining the weight to be given to the testimony.

Having permitted the jury to hear testimony concerning plaintiff's consumption of liquor and its effect upon his sobriety, the trial court, over plaintiff's objection, submitted the following instructions to the jury:

> "Defendants' Instruction No. 5 (I.P.I. 12.01):
>
> Whether or not a person involved in the occurrence was intoxi-

cated at the time is a proper question for the jury to consider to- gether with other facts and circumstances in evidence in deter- mining whether or not he was contributorily negligent. Intoxication is no excuse for failure to act as a reasonably careful person would act. An intoxicated person is held to the same standard of care as a sober person.

Defendants' Instruction No. 6 (I.P.I. 150.15):

A person is 'intoxicated' when as a result of drinking alcoholic liquor there is an impairment of his mental or physical faculties so as to diminish his ability to think and act with ordinary care."

Plaintiff correctly points out that the trial court commits error if it instructs the jury on the issue of intoxication when the record is devoid of any testimony that the plaintiff was intoxicated (*Shore v. Turman* (1965), 63 Ill.App.2d 315, 322-23, 210 N.E.2d 232). Plaintiff further suggests though, that defendants' instructions here were improper since plaintiff's witnesses testified that he was not intoxicated and defendants' witness, Kalivoda, testified—not that plaintiff was intoxicated—but, rather, that he was "under the influence." It is plaintiff's position that the phrase "under the influence" cannot be equated with the terms "in- toxicated" or "drunk," that the record thus contains no evidence that plaintiff was intoxicated on the night of the accident, and, accordingly, defendants' instructions were unwarranted.

Plaintiff cites as authority the case of *French v. City of Springfield, supra.* There a doctor who had taken a blood sample from the deceased testified that the amount of alcohol found in the sample indicated the deceased "would be * * * under the influence of alcohol." The trial court then instructed the jury regarding contributory negligence but failed to submit the instructions attacked by plaintiff in the instant case. In reversing the judgment of the trial court, this court noted that, al- though the doctor's opinion was proper evidence for the jury to con- sider, the test is not whether the deceased was "under the influence," but whether he was intoxicated within the definition of that term as con- tained in IPI—150.15. This court further stated that, in the absence of instructions defining intoxication and the relationship between intoxica- tion and the exercise of due care,

"[T]he jury was left in a complete vacuum as to how it was to deal with the evidence. Furthermore, this would have been so even if Doctor Nickey had testified that [the deceased] was intoxicated. Due to the absence of 12.01, the jurors might well have concluded that once evidence of drinking or intoxication appears, recovery is barred and this is not the law, provided the case is submitted to the trier of fact." (5 Ill.App.3d at 376-377.)

The test then is not whether the plaintiff was "under the influence" or "intoxicated" but whether he was "intoxicated within the definition of that term as contained in I.P.I. 150.15." 5 Ill.App.3d at 376.[2]

■■ In the case at bar Kalivoda's testimony provided a sufficient basis for the challenged instructions. Accordingly, the trial court properly submitted to the jury defendants' instructions 5 and 6.

Of further significance is the fact, as noted earlier, that plaintiff's counsel initiated the inquiry into plaintiff's consumption of liquor and its effect upon him. Having introduced that evidence, he now contends it was error to instruct the jury as to how they must interpret and deal with the evidence. This position is untenable since a plaintiff cannot be heard to complain of a situation which he, himself, has created. *Levy v. Levy* (1969), 117 Ill.App.2d 194, 210, 254 N.E.2d 108.

## II.

Plaintiff next contends the trial court erred when, over plaintiff's objection, it instructed the jury concerning contributory negligence, to wit:

"Defendants' Instruction No. 2 (I.P.I. 11.01):

When I use the expression 'contributory negligence,' I mean negligence on the part of the plaintiff that proximately contributed to cause the injury.

Defendants' Instruction No. 3 (I.P.I. 10.03):

It was the duty of the plaintiff, before and at the time of the occurrence, to use ordinary care for his own safety. That means it was the duty of the plaintiff to be free from contributory negligence."

■■ The giving of an instruction is proper so long as there is some evidence in the record to support it (*Chicago & W.I.R.R. Co. v. Bingenheimer* (1886), 116 Ill. 226, 230, 4 N.E. 840). Here the parties joined issue in their pleadings on plaintiff's exercise or failure to exercise due care for his own safety and each party offered testimony concerning whether or not plaintiff was intoxicated. Since the instructions were supported by evidence in the record, the trial court properly instructed the jury on the issue of contributory negligence.

---

[2] Similarly this court, in *Weiner v. Trasatti* (1974), 19 Ill.App.3d 240, 244, 311 N.E.2d 313, stated that:

"[P]roof of intoxication in a dram shop suit requires evidence which establishes that the person involved was in fact intoxicated. It is not enough that the evidence prove only that the alleged intoxicated person consumed alcohol. * * * In all instances of this kind, therefore, the crucial inquiry is whether consumption of intoxicating liquor, together with evidence of unusual behavior, shows that as a result of drinking alcoholic liquor there was an impairment of mental or physical capabilities that diminished the person's ability to act with ordinary care."

Plaintiff also attacks the trial court's refusal to submit to the jury his instruction which set out a driver's statutory duty to exercise due care to avoid colliding with any pedestrian upon any roadway and to give warning by horn if necessary. Plaintiff's instruction, as submitted, paraphrased IPI-70.03 which, in its entirety, also states the corresponding statutory requirement that a pedestrian crossing a roadway at other than a marked or unmarked crosswalk within an intersection shall yield the right-of-way to all vehicles upon the roadway. Further, plaintiff offered no instruction defining the term "roadway." In light of these omissions, the trial court properly refused the instruction since it did not fully present to the jury the law governing the issue. *Randal v. Deka* (1956), 10 Ill.App.2d 10, 134 N.E.2d 36.

Finally plaintiff argues that the trial court improperly instructed the jury regarding circumstantial evidence as follows:

"Defendants' Instruction No. 7 (I.P.I. 1.03):

A fact may be proved by circumstantial evidence. Circumstantial evidence consists of proof of facts or circumstances which give rise to a reasonable inference of the truth of the facts sought to be proved."

Each party established the facts necessary to support his theory of the case by means of direct evidence. Accordingly, there was no need to instruct the jury as to circumstantial evidence but, viewing the conduct of the trial and the instructions in their entirety, we are of the opinion that whatever prejudice to plaintiff's case resulted from this error was not of such a degree as to warrant reversal.

For the reasons set forth the judgment of the circuit court of Cook County is affirmed.

Judgment affirmed.

STAMOS and LEIGHTON, JJ., concur.