Michael B. Compton, a Minor, by Otis A. Compton, His Father and Next Friend, Plaintiff-Appellant, v. Dundee Township Park District, a Municipal Corporation, Defendant-Appellee.

### Gen. No. 70–14.

Second District.

September 14, 1970.

Rehearing denied November 2, 1970.

Strass, Terlizzi and Skjoldager, of Dundee, for appellant.

O'Brien, Burnell, Puckett & Barnett, of Aurora, for appellee.

MR. JUSTICE ABRAHAMSON delivered the opinion of the court.

The plaintiff prosecutes this appeal from a judgment in favor of the defendant in his suit brought against the Dundee Township Park District to recover damages for personal injuries suffered by him.

The defendant Park District owned and maintained Keith Andres Park in Carpentersville, Illinois. In 1964 or 1965, the Park District constructed a coasting slope in the park by the removal of trees from a heavily wooded area and the regrading of the surface to utilize the natural contour of the land. When it was completed, the slope was approximately 55 feet high, 30 feet wide and 408 feet long. A handrail was constructed about 80 feet to the side of the slope and two signs directed the public

to use the handrail to ascend the slope. The park itself was small in size and no supervision was provided.

On January 9, 1967, Michael B. Compton, then a few days from his ninth birthday, returned from school and took his sled to the coasting slope directly across the street from his home at about 4:00 p. m. There were approximately 10 to 15 other children on the slope that afternoon. Michael went up and down the slope about 5 times and on each occasion went up the face of the slope instead of by the handrail. On his last ascent, Michael was a few steps behind another boy who used a stick or pole about 3 to 4 feet long to help him up the hill. When they were about halfway up, the other boy dropped the pole to the side and continued his ascent. Michael picked up the pole with his right hand, and dragging his sled with his left, took 2 or 3 more steps up the slope before he lost his footing on the ice. Michael fell and the pole went into his right eye. A week later the eye was removed.

Michael brought suit, through his father, Otis Compton, on June 26, 1967, and alleged that the Park District was negligent in the maintenance of the area and in its failure to provide supervision on the slope, and that its negligence was the cause of the serious injuries suffered by him. He prayed for judgment in the amount of $250,000 for his damages. The matter proceeded to trial before a jury on May 15, 1969, and a verdict was returned "for the defendant, and against the plaintiff." The jury also answered "no" to the defendant's special interrogatory "Was the plaintiff, Michael B. Compton, guilty of any negligence which proximately caused or contributed to cause the injury he sustained?"

The principal contention of the plaintiff in the trial court was that the Park District was negligent in its failure to provide supervision for the coasting slope. On appeal, he complains that the Park District was improperly permitted to raise as defense to that allegation a lack of

funds to employ a supervisor and the negligence of the boy's parents.

An examination of the record discloses that the issue of funds available to the Park District was first introduced during the plaintiff's examination of Charles O'Neil, a park commissioner, called as an adverse witness pursuant to section 60 of the Civil Practice Act. O'Neil testified that he was a member of the committee that would determine if and where recreational facilities would be constructed within the park district and that he took part in the decision to construct the coasting slope. He was then asked if the committee considered the "necessity or desirability of having supervision on this particular slope?" He answered:

> "Yes. We talked about supervision, but not having a recreation tax, we did not know how we could provide it."

O'Neil then gave his opinion that supervision was desirable but not necessary.

Joel Carter was the superintendent of the park district at the time of the accident and testified for the defendant. Carter also was of the opinion that supervision would be desirable at the slope but was not practical in this case. He was then asked why it was not practical and replied:

> "From a financial standpoint, first of all. The Park District simply did not have funds to provide employees for that purpose. . . ."

 It is recognized by the counsel for the plaintiff that he neither objected to the testimony thus given nor moved that it be stricken from the record. However, he argues that his failure so to do should not be held against the plaintiff in view of his minority and the special protection afforded minors by the law. It is true that Illinois follows the rule that the court "has a duty

40

to see that the rights of an infant are adequately protected, and is bound to notice substantial irregularities even though objections are not properly presented on its behalf." Muscarello v. Peterson, 20 Ill2d 548, 555, 170 NE2d 564; Giles v. Keunnen, 50 Ill App2d 389, 391, 200 NE2d 143. This so-called "Muscarello" rule does not mean, however, that every failure to object to improper testimony by counsel for a minor litigant gives rise to reversible error. Reeves v. Eckles, 108 Ill App2d 427, 430, 248 NE2d 125. The testimony in regard to the lack of adequate funds to provide a supervisor at Keith Andres Park was unquestionably irrelevant to the issue of this case and objections to it if properly raised should have been sustained. However, the failure to raise such objections did not result in such a "substantial irregularity" as to fall within the doctrine of the Muscarello case.

The plaintiff employs the same argument to support his further contention that it was error to allow a magistrate to preside at the trial since the ad damnum reasonably exceeded $10,000. Section 622 of chapter 37 (Ill Rev Stats 1967, c 37, § 622) provides that civil proceedings shall be assigned to magistrates where the damages claimed do not exceed $10,000. However, section 628 provides that "All objections to the propriety of an assignment to a magistrate are waived unless made before the trial or hearing begins." The Supreme Court in the case of Coleman v. Scott, 38 Ill2d 387, 389, 231 NE2d 408, considered these sections and concluded that absent such objection there was "no absence of jurisdiction" even though the ad damnum is that case (and judgment) was $10,000. In our case, the record indicates that respective counsel stipulated that the magistrate hear the case and that no question would be raised as to his jurisdiction. Counsel for the plaintiff now maintains that he had no authority to so stipulate and cites a number of cases in which it has been held that various

rights of a minor cannot be waived. A magistrate is a full judicial officer; People for the Use of Cullerton v. Crawford, 80 Ill App2d 237, 243, 225 NE2d 80; and unless an objection is raised before a trial begins as to the propriety of a particular assignment to him, it is waived, Coleman v. Scott, ibid. We do not feel that the "right" to object to the jurisdiction of a magistrate is of the same class as those rights that have been held beyond waiver by a minor. If we were to accept the logic of the plaintiff in support of these contentions, the conduct of a lawsuit on behalf of a minor would be virtually beyond the discretion of trial counsel and reposed in the court. We do not feel that the Muscarello doctrine or the interests of justice compels such a conclusion.

 The plaintiff also complains that the jury should have been instructed that the negligence of his parents could not be charged against him since the court improperly permitted evidence on that issue to be presented to it. Since the father had assigned his right to recover for certain medical expenses to his son, it is not certain that such evidence was improper. Rahn v. Beurskens, 66 Ill App2d 423, 213 NE2d 301. In any event, the jury was instructed that "contributory negligence of the parents is not an issue in this case" and the further instruction offered by plaintiff would have been redundant.

 It is next maintained that it was error not to give plaintiff's instruction 6 (IPI No. 5.01) to the effect that the failure of the Park District to have all members of the Board testify raised a presumption that their testimony would have been adverse. It is not clear that the members of the Board would have any knowledge pertinent to the suit and in any event, as public officials, they were clearly "equally available" to either party. For these reasons, the instruction was properly refused.

██ ██ Lastly, it is argued that the court should have granted the motion of the plaintiff for judgment notwithstanding the verdict in view of the answer to the special interrogatory and after the improper evidence was disregarded. The rule has been that a "judgment n. o. v. (should be) entered only in those cases in which all of the evidence, when viewed in its aspect most favorable to the opponent, so overwhelmingly favors movant that no contrary verdict based on that evidence could ever stand." Pedrick v. Peoria & E. R. Co., 37 Ill2d 494, 510, 229 NE2d 504. Based on that test, the motion was properly denied by the trial court and the judgment should be affirmed.

Judgment affirmed.

DAVIS, P. J. and SEIDENFELD, J., concur.