DONNA FRENCH, Plaintiff-Appellant, *v.* CITY OF SPRINGFIELD, ILLINOIS, Defendant-Appellee.

(No. 11422;

Fourth District—May 16, 1972.

370

Thomas F. Londrigan and Robert Weiner, both of Springfield, for appellant.

W. J. Simhauser, City Attorney, of Springfield, for appellee.

Mr. JUSTICE SIMKINS delivered the opinion of the court:

Plaintiff-Appellant Donna French was a guest passenger in an automobile driven by Phillip McCarty. The car collided with a utility pole in the 2400 block of South Fifth Street in Springfield, Illinois, at about 2:00 A.M., on January 16, 1969. McCarty was killed in the accident and plaintiff suffered severe injuries, some of which are permanent.

Plaintiff sued the City of Springfield; the case was submitted to a jury which returned a verdict in favor of the City, and plaintiff appeals from the judgment entered on the verdict.

In view of the disposition made of the issues raised in this appeal, there is no point in describing at length the scene of the occurrence. Suffice it to say that Fifth Street runs north and south, and is a one-way street for traffic proceeding in a southerly direction. It is 52 feet in width, there being three traffic lanes, plus additional lanes for parking on both the east and west sides of the street. The utility pole, struck by the car in which plaintiff was riding, was on the west side of Fifth Street and south of the overpass which carries the tracks of the Norfolk and Western Railway over Fifth Street. As traffic approaches the overpass from the north, Fifth Street begins its inclination from level (in order to go under the Norfolk and Western tracks) at a point approximately 400 feet north of the point where it descends to its lowest level beneath the overpass, then gradually ascends to its original level at a place approximately 380 feet south of its point of lowest descent beneath the overpass. The minimum verticle clearance between the surface of Fifth Street and the overpass is 14′ 3⅜″.

Some five days prior to the date of the accident employees of the City Water, Light and Power Department, in the process of repairing a leak in a water main, had broken the pavement and made excavations in the east parking lane and in a portion of the east driving lane on Fifth Street.

These excavations were approximately 510 feet south of the point of lowest verticle clearance between Fifth Street and the overpass. On completion of the work certain barricades and flare pots were placed in front of the excavations. The utility pole with which the car collided was on the west side of Fifth Street approximately 150 feet southwest of the barricaded area.

Plaintiff's complaint charged the City with negligence in failing to post signs north of the barricades to warn approaching motorists, of placing barricades which obstructed and were hidden from the view of motorists, of failure to place barricades which could be seen at night and of not adequately illuminating the barricades. By later amendment, she additionally charged that no application was filed with the City Clerk, as provided by City ordinance, and failure to have the street obstruction approved by the Superintendent of Streets through issuance of a permit as required by the ordinance. Excepting the aforesaid amendment, the thrust of the Complaint is negligent failure to adequately warn motorists of the obstruction in the street.

At the start of the trial plaintiff submitted a Motion *in Limine* which requested the Court to rule that the results of a blood alcohol test performed on the deceased driver, Phillip McCarty, were not admissible in evidence. Plaintiff reasoned that since McCarty's intoxication was not an issue, that evidence of his intoxication was not imputable to plaintiff, and the alcoholic blood content of McCarty, a fact not known to plaintiff prior to the accident, was not probative as to her standard of conduct. This motion was denied by the trial judge.

During the course of the trial the defendant called several witnesses on the issue of the intoxication of McCarty. Roger Hinricks testified that he saw plaintiff and McCarty at the Harness House at about 12:30 A.M., on morning of the accident. Hinricks indicated that when he sat with them they were consuming a gold beverage which was similar in appearance to the whiskey and water that he was drinking. Hinricks also stated that plaintiff and McCarty each had two of these drinks and were still at the Harness House when he left at 1:30 A.M. On cross-examination Hinricks testified that McCarty's speech was clear, there was nothing unusual in the way he walked, and his eyes were the same as they were at any other time. Finally, Hinricks declared there was nothing unusual about the plaintiff.

Another witness, Glen Wolfe, called by defendant, testified that he saw and talked to plaintiff and McCarty for 15 minutes at the bar in the Robinhood Restaurant between 11:00 and 11:30 P.M., on the evening of January 25th, that each had a glass with ice cubes and liquid in it before them, and that he talked to them and was within two feet of them.

However, Wolfe admitted he did not know what the glasses contained. This was the extent of defendant's evidence on the question of the intoxication of Phillip McCarty, when plaintiff renewed her motion to exclude the blood alcohol test evidence. Whereupon defendant's counsel responded, "Well, I'm making the motion now, to offer the evidence for the limited purpose of bearing on the question of proximate cause." The Court responded, "All right. Motion allowed."

The jury was brought in and in its presence, defendant's counsel stated, "May it please the Court. At this time I wish to offer the testimony of Mr. William Alexander for the purpose, for the limited purpose of bearing on the question of proximate cause of the accident." The Court responded, "All right." Plaintiff's counsel then asked that the record show his continuing objection to the testimony. The Court stated, "All right. It will be received subject to the continuing objection and with the admonition that it is for the limited purpose of bearing on the question of proximate cause. Proceed."

Defendant then called Herbert Alexander, a medical technologist and assistant laboratory supervisor at St. John's Hospital in Springfield. Alexander had performed a blood test on a specimen taken from the body of McCarty. The test was performed on January 27, 1969, at the request of Doctor Nickey. The test was an enzyme reaction test and was for the purpose of determining the quantity of alcohol in the blood. The results of the test showed that the blood contained .136 percentage of alcohol.

Defendant then called Doctor Nickey, saying "May it please the Court, at this time I wish to offer the testimony of Doctor William N. Nickey for the limited purpose of bearing upon the question of proximate cause of this accident, and I ask that the jury be so admonished." Plaintiff again objected and the Court's ruling was "All right. We'll proceed with the understanding that there is a continuing objection to the questions asked this witness, and the jury are instructed that it's being offered for the limited purpose of bearing on the issue of proximate cause."

Defendant thereupon called Doctor William N. Nickey, Jr., a pathologist at St. John's Hospital. The doctor testified that January 26, 1969, between 8:00 and 9:30 A.M., he drew a blood sample from the body of Phillip McCarty who was deceased when the same was drawn. When death occurred is not disclosed in the record. Doctor Nickey delivered the sample to Herbert Alexander, and he testified that Alexander's report showed that the quantitation of blood alcohol was .136 grams percent.

Doctor Nickey then testified that in connection with his studies in pathology, clinical pathology and forensic pathology he had never made any studies of the effect of alcohol on the human body, had never made any type of studies in connection with the effect of alcohol on the human

body. The doctor stated that alcohol has different reactions on different persons, that the "type of person" who has consumed the alcohol "sometimes" has something to do with its effect on him, and that alcohol has an effect on the actions of a person. He was then asked "Have you made any observations concerning the effect upon persons who have consumed a quantity of alcohol and who later, upon blood tests having been made, have shown a quantity of alcohol in their bloodstream?" Doctor Nickey responded that he had made a number of studies in which he had done autopsies on deceased persons who had been involved in various automobile or homicidal accidents or accidental incidents leading to their death, "while they are under the influence of alcohol and had appreciable alcohol in their blood." He had not made controlled studies during life of people drinking alcohol on an experimental model. He further testified that as a result of his studies he had been able to form an opinion as to the influence of a given quantity of alcohol upon individuals when a certain quantity of alcohol is found in their bloodstream and that assuming a person had .136 percent alcohol in his bloodstream in his professional opinion, "* * * I think he would be * * * *under the influence of alcohol.*" (Emphasis added.)

On cross-examination, Doctor Nickey testified that to the extent there is *any* measurable alcohol that has *any* effect whatsoever upon an individual, to that extent he is under the influence of alcohol.

At the close of defendant's evidence, outside the presence of the jury, plaintiff moved to strike Doctor Nickey's testimony on the ground that even if it established intoxication it was not imputable to defendant nor was it a defense if intoxication was a proximate cause, which motion was denied. During the conference on instructions (which was held at the close of defendant's case but before plaintiff's rebuttal evidence was adduced) plaintiff renewed her motion to strike the testimony of Doctor Nickey, urging that the doctor had testified that McCarty was under the influence rather than intoxicated, that there could not be a full understanding of that type of testimony and that the jury might misuse or misinterpret that type of testimony. The court denied the motion and then, at request of plaintiff's counsel, reserved ruling until the testimony of plaintiff's rebuttal witness, Terry Beam, was taken.

Beam testified that he knew Phillip McCarty and had worked with him. He stated that he had seen McCarty at about 12:30 A.M., on January 26, 1969, at the Harness House and had talked with him for four or five minutes. In the past, Beam testified, he had observed persons who were intoxicated and noted that the physical manifestations of intoxication were slurred speech, lack of control of their movements, and eyes which were sometimes glazed and glassy. Beam asserted that at

12:30 A.M., McCarty had not given the appearance of being intoxicated. Concluding his direct testimony, the witness indicated that as he was leaving the Harness House at 1:30 A.M., he saw McCarty again and his appearance was no different than it had been at 12:30 A.M.

On cross-examination Beam conceded that after he talked with McCarty he saw plaintiff and McCarty with other persons seated at a table with glasses in front of them. The witness did not testify to seeing McCarty consume anything, nor did he testify that he knew what was in the glasses. When he left at 1:30, Beam stopped and shook hands with McCarty and talked to him about McCarty's pending assignment to Vietnam. McCarty told Beam that his departure had been postponed for a week, Beam wished him good luck and left. During this conversation McCarty remained seated. Throughout the course of the evening the witness observed nothing unusual about Donna French and did not confer with her.

■■ The Court then denied plaintiff's motion to strike the testimony of Doctor Nickey. This was clear error of such magnitude that it requires reversal and remandment for a new trial.

■■ Plaintiff contends that it was error to permit introduction of the results of the blood alcohol test because McCarty was "not in privity" with the plaintiff against whom it was introduced. In this regard, both parties to this appeal have cited numerous cases on the question of the applicability of the alleged intoxication of Phillip McCarty to the issues presented by the trial of this case. We have reviewed them all in detail and have discovered none on point. However, we feel that recourse to certain well-defined rules, when coupled with common logic, leads to the conclusion that the question of McCarty's alleged intoxication was admissible.

■■ Plaintiff had alleged that the specified acts of negligence on the part of the defendant were the proximate cause of her injuries and defendant in its answer denied that it was guilty of any negligence which proximately caused plaintiff's injuries. Thus, the issue as to proximate cause was joined on the pleadings. A defendant has the right, not only to rebut evidence tending to show that its acts are negligent and the proximate cause of claimed injuries, but also has the right to endeavor to establish by competent evidence that the conduct of a third person, or some other causative factor, is the sole proximate cause of plaintiff's injuries, and if the evidence is sufficient the defendant is entitled to an instruction on his theory of the case. (*Hack v. New York, Chicago and St. Louis R.R. Co.*, 27 Ill.App.2d, 206, 225, 169 N.E.2d, 372.) This proposition, long recognized in the law of this State, was embodied, at the time of this trial, in IPI Instructions 12.04 Revised and 12.05 Revised. Both

of these instructions were tendered by plaintiff and given by the Court, and both contained the paragraph relating to sole proximate cause. The following language contained in IPI 12.04 Revised, "However, if you decide that the sole proximate cause of injury to the plaintiff was the conduct of some person other than the defendant, then your verdict should be for the defendant.", has been expressly approved in *Beccue v. Rockford Park District*, 94 Ill.App.2d 179, 195, 236 N.E.2d 105.

In *Downs v. Camp*, 113 Ill.App.2d, 221, 252 N.E.2d 46, a wrongful death action, the decedents were killed when struck in an intersection when an automobile operated by one Plair ran a stop sign. At the time of the accident Plair was being pursued by the defendants Camp and Dillard (who were police officers) in their squad car. The defendants tendered and the trial court gave IPI Instruction 12.04 Revised which included the second paragraph relating to sole proximate cause. On appeal the plaintiff urged that the second paragraph of the instruction should not have been given. The Court held that there was evidence from which the jury could well determine that Plair's conduct was the sole proximate cause and that the jury had been properly instructed. In *Miyatovich v. Chicago Transit Authority*, 112 Ill.App.2d 437, 443, 251 N.E.2d 345, the Court discussed in detail the second paragraph of IPI 12.04 Revised. There the plaintiff was riding as a passenger in a car being driven by her husband which had collided with defendant's bus. The defendant contended that the conduct of the plaintiff's husband, a third person not a party to the suit, was the sole proximate cause of the accident because he ran a red light. Defendant tendered IPI 12.04 Revised including the last paragraph relating to sole proximate cause. The Court held that the paragraph in question is given so that the jury is properly instructed in cases where the negligence of some third person is presented as a defense, and that it accurately states the law and should have been given in lieu of defendant's version of 12.04 which omitted the last paragraph of the instruction.

In the case at bar defendant had a right to endeavor to establish by competent evidence that the conduct of Phillip McCarty was negligent and the sole proximate cause of plaintiff's injuries. In doing so it could endeavor to convince the jury that excessive speed, failure to keep a proper lookout or any other negligent act on the part of McCarty was the sole proximate cause and, if the evidence was sufficient, utilize the appropriate instructions as was in fact done here. No case has been cited which precludes the proof of intoxication of a third person, not a party to the suit, when it is claimed by the defense that such third party's conduct is the sole proximate cause of the injuries involved. "* * * the basic principle which animates our law of evidence is that what is

relevant is admissible." *People ex rel. Noren v. Dempsey,* 10 Ill.2d, 288, 293, 139 N.E.2d, 780.

■■ Competent evidence establishing intoxication on the part of the driver of the car in which plaintiff was riding is, by all logic and reason, material, relevant and of probative value in determining whether he was negligent, a factor which was proper for defendant to establish in endeavoring to persuade the trier of fact that McCarty's negligence was the sole proximate cause of plaintiff's injuries. Proof of intoxication, and the results of blood alchohol tests have repeatedly been held proper evidence for the jury to consider in weighing the conduct of one whose conduct is, as here, an issue to be resolved in determining a plaintiff's right to recover for injuries. See *e.g., Shore v. Turman,* 63 Ill.App.2d, 315, 210 N.E.2d, 232.

■■ The result of the blood alcohol test was admissible here, when coupled with proper expert testimony explaining its significance. However, the test is *not* whether McCarty was "under the influence". The issue which may be presented to the jury is whether or not he was *intoxicated* within the definition of that term as contained in IPI 150.15 Revised, and the failure to so present the issue in those terms is reversible error. Doctor Nickey, we note, had testified that to the extent there is measurable alcohol in the bloodstream of an individual, that individual is "under the influence". The question put to him was whether McCarty was "under the influence". The jury might well have concluded that proof of measurable alcohol in the bloodstream placed him under the influence and that this would preclude recovery. Intoxication, is not negligence *per se,* it is simply a circumstance to be weighed by the jury in its determination of the issue of due care. *Patarozzi v. Prairie States Oil and Grease Co.,* 71 Ill.App.2d, 155, 218 N.E.2d, 113.

The problem was further compounded by the fact that IPI Instructions 12.01 and 150.15 were neither tendered nor given. IPI 12.01 instructs the jury: "Whether or not a person involved in the occurrence was intoxicated at the time is a proper question for the jury to consider together with other facts and circumstances in evidence in determining whether or not he was (negligent) (contributorily negligent). Intoxication is no excuse for failure to act as a reasonably careful person would act. An intoxicated person is held to the same standard of care as a sober person." The definition of intoxication is contained in IPI Instruction 150.15 which provides: "A person is 'intoxicated' when as a result of drinking alcoholic liquor there is an impairment of his mental or physical faculties so as to diminish his ability to think and act with ordinary care."

■■ In the absence of these instructions the jury was left in a complete vacuum as to how it was to deal with the evidence. Furthermore, this

would have been so even if Doctor Nickey had testified that McCarty was intoxicated. Due to the absence of 12.01, the jurors might well have concluded that once evidence of drinking or intoxication appears, recovery is barred and this is not the law, provided the case is submitted to the trier of fact. See IPI 12.01 Revised, and *Patarozzi v. Prairie States Oil and Grease Co.*, 71 Ill.App.2d, 155, 218 N.E.2d, 113.

■■ This case was hotly contested, the question of liability an extremely close one, and the evidence sharply conflicted on many key points. Every witness called by defendant simply testified that McCarty was or could have been drinking, but every single eyewitness who observed him (the last within approximately thirty minutes of the accident in question) testified to his sobriety. Defendant's case then rested almost entirely upon the testimony and opinion of Doctor Nickey. This testimony and the opinion elicited was highly prejudicial, and coupled with the failure to properly instruct the jury deprived plaintiff of a fair trial and necessitates reversal. The responsibility to insure that the jury is properly instructed is one jointly shared by counsel and the court, and here the failure to meet that responsibility is manifest.

On retrial the expert testimony as to the results of the blood alcohol test, if tendered, should be restricted to terms of intoxication as that concept is defined in IPI 150.15, and if the testimony is admitted IPI 12.01 and 150.15 must be given.

■■ The ordinance pleaded in the amendment to the complaint provides that no person shall obstruct any city street until he has filed an application with the City Clerk describing the purpose, period and extent of the work desired to be done and shall have obtained a permit signed by the Clerk and endorsed by both the Superintendent of Streets and City Engineer. Plaintiff urges that it was error for the court to refuse to admit plaintiff's Exhibits 2 and 3 because "* * * they documented the failure to give notice to other departments of the City as provided, by statute * * *." The exhibits in question are blank forms of applications and permits designed for use under the ordinance. Defendant had admitted, in its answer to the Amendment to the Complaint that no application had been filed, no permit issued, and the ordinance was submitted to the jury in plaintiff's instruction 23A which was IPI 60.01 Revised. In addition, Steve Koskey, who was acting Traffic Engineer and Traffic Engineer in January of 1969, testified that no application was filed or permit issued. Since the jury was adequately informed as to the statute and its violation was confessed, the sample forms comprising the two exhibits were, at best, cumulative evidence. There was no error in the Court's ruling.

Officer Harold Bryant of the Springfield Police Force testified on

behalf of the defendant. Called to the location of the accident, Officer Bryant had conducted an investigation of the accident during which he made certain measurements and prepared a diagram of the scene. At the trial, he described the position of the McCarty car and the barricades. He also testified that other officers were present and named several of them on examination. Officer Bryant stated that he had never received any complaints about the barricades and had never heard any of the other officers present say to anyone that they had received complaints nor did he know whether any complaints about the barricades had ever been made to the Police Department.

James Galloway had been called by plaintiff and on direct examination had testified that he was called by the City Police Department to go to the site of the accident and photograph the scene. This he did and arrived while the officers were still there. One officer directed him to photograph the barricades and Officer Bryant assisted Galloway "* * * in a general way * * *." Galloway also testified that he "believes" Officer Bryant showed "* * * his concern about the placement of the barricades in the street * * *." but that it was difficult to "* * * say just who it was who said that * * *."

On examination Galloway testified he conversed with several of the police officers present and "at least one" of them was critical of the "situation relative to the barricades and my understanding of what he said was that this had been reported—that this had been reported prior to the situation that morning. I don't recall his exact words, nor can I recall the exact officer * * *." Plaintiff urges that the Court's refusal to give his tendered instruction IPI 5.01 was error because Steve Koskey (the City Traffic Engineer) had testified that he was not aware of the obstruction to the street prior to the date of the accident. The reasoning here is tenuous. Galloway did not testify that any officer stated that Koskey had been given notice. Even taking Galloway's rather vague and uncertain testimony in a light most favorable to plaintiff the best that can be derived was that the existence of the obstruction had been reported but he did not say to whom. IPI 5.01 deals with the failure of a party to call a witness which is under that party's control, where the witness was not equally available to the adverse party and where a reasonably prudent person would have produced the witness if he believed the testimony of that witness would be favorable to him. Under these circumstances the jury is instructed that it may infer that such testimony would have been adverse to the party not calling the witness. Plaintiff argues that the failure of the defendant to call other officers or agents of the City "* * * to provide corroboration and to explain noncompliance with the ordinance was error."

■■ This contention fails for several reasons. First: as previously indicated, the City had admitted noncompliance with the provisions of the ordinance. Second: despite the fact that the City Engineer had testified that he was unaware of the street excavations and the barricades, notice was not an issue in the case. The Complaint did not allege that this was a condition of which the defendant knew or should have known. The defendant had made the excavation and had placed the barricades, and it was for this reason that notice or knowledge of the hazard was not an issue. Third: police officers and city employees are public officials and are equally available to both parties here. (*Compton v. Dundee Township Park District*, 129 Ill.App.2d, 36, 263 N.E.2d, 146.) The Court did not err in refusing the instruction.

We further note that the failure of the City to comply with the provisions of the ordinance in question in effect involves the failure of one department to inform another what it was going to do. Whether this could be considered to be a proximate cause of plaintiff's injuries is not before us.

■■ One further aspect of this appeal demands attention. Counsel for defendant indulged in final argument which was not only patently prejudicial but of such impropriety that it, standing alone, would have required reversal. First, defense counsel's argument invited the jury, as taxpayers, to identify themselves with the defendant City and urged the jury that if they felt "* * * the people of the City were not at fault, * * *." they should find for the City.

Second, the automobile in question was a Corvette which was manufactured by General Motors. In colliding with the utility pole it broke into two complete halves. In order to rebut the evidence of excessive speed, plaintiff called an expert who testified that a Corvette frame consists of two pieces welded together. The expert then stated that he had inspected the wrecked car and found it had broken at the welds which, in his opinion, were faulty. He also testified to the effect that the welds would have broken had the car struck the pole "just right" at a speed of 20 miles per hour. In argument to the jury defendant's counsel told the jury that if it returned a verdict in favor of the City he didn't "* * * feel that you have to feel you have forever closed the door to any recovery on behalf of this plaintiff because * * * they have brought out * * * that they think this automobile broke in half because of defective welds * * * well if they think that * * *.", at which juncture plaintiff objected that General Motors was not a party and that the evidence was presented to indicate lack of speed. The Court stated, "It's pure argument you may continue." Counsel for defendant then declared: "If they think they have evidence of defective

welds, they have every right to bring a lawsuit against General Motors, and I'm willing to wager, if you return a verdict in favor of the City in this case, there's going to be a lawsuit on file in this Court next week against General Motors." Plaintiff's counsel again objected and requested an instruction that the jury disregard the statement. The Court overruled the objection. Merely to state the argument is to demonstrate it is gross impropriety. The type of argument demonstrated in this record is to be condemned and must not be indulged in on retrial.

Reversed and remanded for a new trial.

TRAPP, P. J., and SMITH, J., concur.