PATRICIA O'CONNELL, a Disabled Person, by Terry Nelson, Special Adm'r, Plaintiff-Appellant, v. THE CITY OF CHICAGO, Defendant-Appellee.

First District (1st Division)    No. 1—94—0520

Opinion filed November 27, 1996.

Parrillo, Weiss & O'Halloran, of Chicago (Michael J. O'Halloran, Clifford Panek, and Keely Truax, of counsel), for appellant.

Susan S. Sher, Corporation Counsel, of Chicago (Lawrence Rosenthal, Benna Ruth Solomon, and Julian N. Henriques, Jr., Assistant Corporation Counsel, of counsel), for appellee.

JUSTICE WOLFSON delivered the opinion of the court:

The law of this state establishes the special interrogatory as guardian of the integrity of a general verdict in a civil jury trial. For that reason, our courts of review have drawn a fine but critical line between proper and improper argument when a lawyer urges jurors to answer a special interrogatory in a certain way.

In this case, the trial judge found plaintiff's lawyer crossed the line during his rebuttal argument. A new trial was ordered after the jury returned a verdict awarding the plaintiff more than $10 million in damages. Our task is to determine whether the trial judge abused his discretion when he granted the new trial. We conclude he did not.

A summary of the facts and of the procedural history of this case is required to place the issue in context.

BACKGROUND

On July 15, 1979, Patricia O'Connell was a passenger on a motorcycle driven by her husband, Bill O'Connell. They rode their motorcycle from their home in Blue Island, Illinois, to a softball game on the north side of Chicago. After the game was over, at about 1 p.m., the O'Connells went to a bar. Bill O'Connell testified that he had "two to three beers" at the bar and was there for about an hour and a half to two hours before leaving. He said he was not intoxicated or impaired. No witness said he was.

The O'Connells were headed toward the southeast side of Chicago. They were travelling south on Lake Shore Drive. As the O'Connells leaned their motorcycle in an effort to negotiate a bend in the road in the 900 block of North Lake Shore Drive, a protruding part of the motorcycle scraped the ground. The motorcycle crashed into a raised lane-dividing wall on the left shoulder of the road.

As a result of the crash, Patricia O'Connell suffered permanent and severe brain damage.

For the left lane, the lane the O'Connells were traveling in, the safe speed of the curve was 29.24 miles per hour. The type of warning sign that should be posted before a curve depends on its safe speed. If safe speed for the curve is less than 30 m.p.h., the proper warning sign shows an arrow turning sharply in the same direction that the road curves. If the safe speed is 30 m.p.h. or more, a sign showing an arrow that curves less sharply should be posted.

The sign actually posted just before the curve at 900 North Lake Shore Drive was a "curve" sign with a speed limit of 30 m.p.h. It should have been a "turn" sign, with a speed limit of 25 miles per hour.

Just how fast the motorcycle was going as it went into the curve is unclear. Bill O'Connell testified he did not remember his speed. Patricia O'Connell was unable to testify. An eyewitness, Monroe Walton, refused to estimate the O'Connells' speed, although he said they were exceeding his speed of 35 miles per hour.

The city admitted that a "turn" sign, not a "curve" sign, should have been posted. It denied that the improper curve sign, accompanied by the 30-mile-per-hour advisory speed, was a proximate cause of the accident.

At trial both sides agreed, based on the then-current case law, that a finding of any contributory negligence of Bill or Patricia O'Connell would be a complete defense because recovery would be

barred by section 3-102(a) of the Local Governmental and Governmental Employees Tort Immunity Act (Tort Immunity Act) (745 ILCS 10/3—102(a) (West 1992)). That is, under *Thompson v. County of Cook*, 222 Ill. App. 3d 459, 584 N.E.2d 170 (1991), *aff'd on other grounds*, 154 Ill. 2d 374, 609 N.E.2d 290 (1993), the O'Connells would not have been "intended and permitted users" of the road.

It turned out that *Thompson* was incorrectly decided on the issue we are concerned with in this case. In *Wagner v. City of Chicago*, 166 Ill. 2d 144, 651 N.E.2d 1120 (1995), the supreme court held a party's contributory negligence did not preclude him from being an "intended and permitted user" of the highway. If the case had been tried under *Wagner*, the mere existence of contributory negligence would not have barred recovery.

But Thompson was the agreed law of this case at trial. It was the agreed law when the city offered the two special interrogatories that have become the heart of the controversy. The interrogatories, each on a separate form, asked whether Bill or Patricia O'Connell has been "guilty of any negligence that proximately caused" her injuries. The jury was instructed that Patricia could not recover if she was negligent and her negligence proximately caused her injury.

We set out the events that took place during plaintiff's counsel's final argument, on rebuttal:

"MR. PANEK: *** Now, when you go to the jury room and you get the verdict form, you are going to have two verdict forms and you are going to have two interrogatories. If you find for the plaintiff, but answer that we were negligent on one of those—

MR. DUBNICK (Assistant Corporation Counsel): Objection, your Honor.

MR. PANEK: We lose—

MR. DUBNICK: Motion, your Honor.

THE COURT: The jury will disregard about the filling out of the interrogatories.

MR. DUBNICK: Your Honor, I have a motion.

(Whereupon, sidebar conference not heard by jury.)

MR. PANEK: I didn't get a chance to finish my statement. I was going to say we lose because we haven't proved our case, and that's what I was going to say when I was interrupted.

THE COURT: Okay. The point I am trying to make is be careful because explaining the consequence of answering the interrogatory one way or the other, that may be in the category. I am saying it's not [*sic*].

MR. DUBNICK: Before he says that, I will object to that and move for a mistrial.

THE COURT: Not at this point.

(Whereupon, on the record in front of the jury.)

MR. PANEK: You are given two verdict forms and two interrogatories. If you sign one for the plaintiff and yet sign one of these interrogatories yes, that either Patricia was negligent or Bill O'Connell was negligent, that would be inconsistent and that would mean you would be telling—

MR. DUBNICK: Objection, your Honor.

THE COURT: It's sustained.

MR. PANEK: That would mean— I wasn't allowed to finish my sentence, that we have not proved our case and I submit to you that we have proved our case to you.

THE COURT: I am reserving ruling on your motion."

The jury returned a verdict for the plaintiff in the amount of $10,090,819. It answered "no" to both special interrogatories.

In its post-trial motion, the city renewed its request for a mistrial, contending counsel's comments regarding the special interrogatories were prejudicial. The trial judge agreed. He granted the city a new trial solely because of the argument concerning the interrogatories.

The plaintiff petitioned this court, pursuant to Supreme Court Rule 306(a) (134 Ill. 2d R. 306(a)), for leave to appeal the trial judge's order. The petition was granted.

DECISION

We must determine two procedural matters.

■ First, because both sides at trial agreed that *Thompson v. County of Cook* established the law of the case, we find that the *Wagner* decision has no impact on this appeal. "It is fundamental to our adversarial process that a party waives his right to complain of an error where to do so is inconsistent with the position taken by the party in an earlier court proceeding." *Auton v. Logan Landfill, Inc.*, 105 Ill. 2d 537, 543, 475 N.E.2d 817 (1984).

■ Second, we must establish the standard to be used when we examine the trial court's ruling. Our supreme court has said: "A court's ruling on a motion for a new trial will not be reversed except in those instances where it is affirmatively shown that it clearly abused its discretion." *Maple v. Gustafson*, 151 Ill. 2d 445, 455, 603 N.E.2d 508 (1992). See also *Tedeschi v. Burlington Northern R.R. Co.*, 282 Ill. App. 3d 445, 448, 668 N.E.2d 138 (1996).

To determine whether the trial judge abused his discretion in this case, we consider that a "circuit court exceeds its discretion only where no reasonable person would take the view adopted by [it]." *Lewy v. Koeckritz International, Inc.*, 211 Ill. App. 3d 330, 334, 570 N.E.2d 361 (1991).

A reviewing court should not overturn an order granting a motion for new trial "merely because the reviewing court would have reached a different result." *Lozado v. City of Chicago*, 279 Ill. App. 3d 285, 288, 664 N.E.2d 333 (1996). A trial judge's discretion is given deference because the judge is in a position to observe the trial attorneys' manner of speaking and the impact their comments had on the jury. *Harrison v. Chicago Transit Authority*, 48 Ill. App. 3d 564, 566, 363 N.E.2d 81 (1977).

We now turn to the trial judge's reason for granting a new trial—counsel's argument concerning the special interrogatories.

Our supreme court has spoken twice on the subject. The seminal decision is *Sommese v. Maling Brothers, Inc.*, 36 Ill. 2d 263, 222 N.E.2d 468 (1966), relied on by the trial judge in this case and cited in virtually every appellate court decision on the issue since 1967.

In *Sommese*, the plaintiff's lawyer told the jury that the special interrogatory had been "slipped in" by the defendant, that the jury's answer to the special interrogatory supersedes the verdict, and that the jury should harmonize its answer to the interrogatory with the verdict so as not "to deprive this woman of any right to recovery." 36 Ill. 2d at 266.

■ Not only does the argument improperly inform the jury of the source of the interrogatory, but "[i]t defeats the purpose of a special interrogatory by advising the jury to conform its answer to its verdict so as to protect the verdict without regard to the evidence." *Sommese*, 36 Ill. 2d at 266-67. The court held the error was so prejudicial it required a new trial, despite the failure of defense counsel to make a timely objection. The *Sommese* decision established the analytical framework for future consideration of final argument about a special interrogatory:

> "It is clear that plaintiff's attorney improperly alerted the jury to the fact that its decision to assess damages would be nullified by an affirmative answer to the interrogatory. Thus, the safeguard against a jury awarding damages out of passion or prejudice or sympathy without first making specific factual determinations and then applying the law was thwarted." *Sommese*, 36 Ill. 2d at 267-68.

■ In the case before us, the plaintiff's injury is severe and permanent. The defendant is a municipal corporation. The risk of juror passion, prejudice, or sympathy was real. Whatever the jury's answers to the interrogatories, it was crucial that they be based on the evidence and the law, not on any desire to protect the general verdict.

The supreme court next spoke on the subject in *Batteast v. Wyeth*

*Laboratories, Inc.*, 137 Ill. 2d 175, 560 N.E.2d 315 (1990). There, twice during closing argument the plaintiffs' lawyer told the jury that if it wanted to award the plaintiffs damages from the drug company, its answer to the interrogatory would have to be that the hospital was not the sole cause of the injuries. This argument was improper, said the court, and was one of several reasons that combined to require a new trial.

The plaintiffs' lawyer in *Batteast* did not suggest the answer to the special interrogatory and the general verdict must be consistent or in harmony. The essential vice of the argument was the lawyer's failure to ask for an answer based on the evidence. "Rather," said the court, "he argued only that such an answer was necessary if the jury wanted to make an award in favor of the plaintiffs against the defendant drug company." *Batteast*, 137 Ill. 2d at 186.

*Sommese* and *Batteast* established the theme that binds us. Appellate decisions have found variations on that theme, but we see a constant strain that guides us in our determination of this troublesome case. The questions we must ask, and then answer, are the following:

> (1) Did the plaintiff's lawyer ask the jury to base its answers to the special interrogatories on the evidence, not on the need to reach a certain result or to protect a general verdict for the plaintiff?

After the sidebar conference, where counsel was warned to "be careful," he argued:

> "You are given two verdict forms and two interrogatories. If you sign one for the plaintiff and yet sign one of these interrogatories yes, that either Patricia was negligent or Bill O'Connell was negligent, that would be inconsistent and that would mean you would be telling—
>
> [Objection sustained.]
>
> That would mean—I wasn't allowed to finish my sentence, that we have not proved our case and I submit to you that we have proved our case to you."

The plaintiff's lawyer approached a land mine when he juxtaposed the "two verdict forms" and the "two interrogatories" before the sidebar. He set it off after the sidebar when he told the jury inconsistency between an answer and a general verdict would mean the plaintiff had not proved her case.

The argument did not ask for answers based on the evidence. It asked for answers that would protect a general verdict for the plaintiff.

This argument for consistency, for harmony or conformity be-

tween interrogatory answer and general verdict, has been condemned by a sturdy line of Illinois cases.

In *Lozado v. City of Chicago*, 279 Ill. App. 3d 285, 287, 664 N.E.2d 333 (1996), the plaintiff's lawyer told the jury its answer concerning the reasonably safe condition of the sidewalk "has to be no to be consistent with your finding that he's getting money." The trial judge there, as here, granted a new trial to the city because of the argument. We said it was not unreasonable for the trial judge to conclude that use of the word "consistent" improperly suggested a "linkage between the answer to the special interrogatory and the general verdict." *Lozado*, 279 Ill. App. 3d at 291.

The same kind of "linkage" proved fatal to verdicts for the plaintiffs in *Massa v. Helmkamp Excavating & Trucking Co.*, 145 Ill. App. 3d 60, 67-68, 495 N.E.2d 648 (1986) ("I suggest to you that that verdict should be returned by you and that in conjunction with that verdict, if you want Mr. Massa to recover in this case, you should answer the special Interrogatories yes"); *Thomas v. Dalpos*, 26 Ill. App. 3d 877, 879, 326 N.E.2d 42 (1975) ("Based upon your findings, if you find for Richard Thomas, then you have got to answer the special interrogatory that, indeed, under the circumstances that night he exercised due care for his own safety. Otherwise, you contradict your verdict, and that gets us nowhere"); and *Sutton v. People's Gas Light & Coke Co.*, 119 Ill. App. 2d 471, 474, 256 N.E.2d 19 (1970) ("Well, I might say this to you folks, if you answer that question 'yes' then no matter what the verdict is that you want to give or will give on the large form of verdict you will be asked to sign, if you answer that question 'yes' that she was, no matter what else you say this little girl will get nothing").

There have been times when trial judges suggested to juries the need to harmonize answers to special interrogatories with general verdicts. These occasions resulted in reversal and remand. See *Estate of Constas v. Constas*, 42 Ill. App. 3d 223, 225, 355 N.E.2d 683 (1976) ("If from the evidence that you have found that the petitioner or the estate has not sustained their position, then you will sign the other verdict which will be consistent with the interrogatories ***" (emphasis omitted)); *Swanson v. Chester Johnson Electric Co.*, 5 Ill. App. 2d 175, 177, 125 N.E.2d 304 (1955) ("The verdict you reach should be compatible with the interrogatories").

We do not mean to say a plaintiff's lawyer must avoid mention of the special interrogatories during final argument. In *Kosinski v. Inland Steel Co.*, 192 Ill. App. 3d 1017, 1028, 549 N.E.2d 784 (1989), the plaintiff's lawyer told the jury: "If you listen to what negligence is and what he was doing, *** if you answer that interrogatory any

way other than no, then you are saying the accident is [plaintiff's] fault and he can't recover." We found the argument properly asked the jury to answer the interrogatory based on the evidence. It did not tell the jury its award of damages would be nullified by a "yes" answer to the interrogatory.

A similar result was reached in *Burns v. Howell Tractor & Equipment Co.*, 45 Ill. App. 3d 838, 848, 360 N.E.2d 377 (1977), where, after plaintiff's counsel summarized the evidence bearing on the special interrogatory, he said: "But if you answer that Interrogatory any way [other] than 'No,' then you are saying, 'It is his fault and he cannot recover.' " We held that the argument was proper because it did not "caution the jury to conform its answer to its verdict." *Burns*, 45 Ill. App. 3d at 848.

In *Moore v. Checker Taxi Co.*, 133 Ill. App. 2d 588, 592, 273 N.E.2d 514 (1971), the plaintiff's lawyer said to the jury: "If you believe that he was not guilty of negligence that caused this accident, you should answer 'No' to that inquiry, because if Allen Moore was guilty of negligence, then he can't recover and they are right." The argument was proper because the lawyer did not tell the jury to harmonize its answer with the general verdict.

The decisions describe the two sides of the line that has been drawn: plaintiff's lawyer may ask the jury for a certain answer to the interrogatory, based on the evidence, and that jury may be told a contrary answer will mean no recovery for the plaintiff. But the line is crossed when jurors are told to harmonize or conform their interrogatory answer with their general verdict, or, as was done in this case, when jurors are told inconsistency would mean the plaintiff's case is not proved. That is impermissible linkage. See *Blevins v. Inland Steel Co.*, 180 Ill. App. 3d 286, 292, 535 N.E.2d 972 (1989).

At first blush, the difference between the two sides of the dividing line appears slight. But the salutary purpose of the special interrogatory—to protect the integrity of the general verdict, to ensure against the damage awards based on passion or prejudice or sympathy warned against by the Court in *Sommese*— justifies firm adherence to the boundary that, by the time of this trial, was fairly easy to discern.

> (2) What was the trial judge's response to the improper argument?

There are occasions when a trial judge's timely response to improper argument can save a plaintiff's verdict, especially when the comment is brief, innocuous, or ambiguous.

In *Wojtowicz v. Cervantes*, 284 Ill. App. 3d 524, 529 (1996), the plaintiff's lawyer told the jury that if the special interrogatory

answers were " 'inconsistent with the general verdict, there's a big problem.' " The trial judge sustained a prompt objection and told the jury to disregard the statement. We held that whatever error occurred by virtue of the single, vague comment was cured by the trial judge's action.

The plaintiff's lawyer strayed over the line in *O'Neil v. Continental Bank, N.A.*, 278 Ill. App. 3d 327, 338, 662 N.E.2d 489 (1996), when he told the jury: "I'd ask that you would carefully review the special interrogatories, answer the special verdicts and answer them *** consistent with your verdict." This "single, innocuous comment was inadvisable," said the court, but a carefully worded curative instruction "made easier" a determination that the defendant suffered no prejudice. *O'Neil*, 278 Ill. App. 3d at 340.

The curative instruction in *O'Neil* told the jury to follow the court's instructions and answer the interrogatories "on the basis of the evidence, and the evidence alone, presented to you during trial." *O'Neil*, 278 Ill. App. 3d at 339.

It was the ambiguity and brevity of the offending statement, along with a cautionary instruction by the trial judge, that saved the verdict in *Levin v. Welsh Brothers Motor Service, Inc.*, 164 Ill. App. 3d 640, 518 N.E.2d 205 (1987) (counsel told jury if it answered "yes" to the special interrogatory as to whether plaintiff's negligence was the sole proximate cause of his injuries, there could not be a verdict for the plaintiff).

In this case, we believe it is appropriate to consider the nature and timing of the impermissible comments, along with the trial judge's response.

Before the sidebar conference, plaintiff's lawyer told the jury it would have two verdict forms and two interrogatories in the jury room. When the city's lawyer objected, the trial judge told the jury to disregard the statement. At that point, no real harm was done. The sidebar followed. Counsel was told to "be careful." The trial judge's response to the city's motion for mistrial was: "Not at this point." Counsel was undeterred.

Immediately after the sidebar, with the jury's attention now drawn to the subject matter, plaintiff's lawyer made the comments that later caused the trial judge to grant the city a new trial. The trial judge sustained the city's objection while counsel was in midsentence, but the sentence was completed anyway. The forbidden territory of linkage had been entered. Counsel did not stumble into it, he marched into it, with eyes open. This time the judge did not tell the jury to disregard the comment. There was no curative instruction, then or later.

(3) Did the city waive its objection to counsel's argument?

We see no merit in the plaintiff's claim that the city waived its objection. The city did object to the comments, three times, and moved for a mistrial at least twice. It is clear from the record that everyone understood the reason for the objection. There was no waiver. See *Lozado v. City of Chicago*, 279 Ill. App. 3d 285, 288-89, 664 N.E.2d 333 (1996).

We conclude the impermissible comments, made in the face of sustained objections and judicial warning, defeated the purpose of the special interrogatories—to serve as a check on the jury's deliberations. This is a case where potential sympathy and passion for a severely injured plaintiff posed a special risk. The trial judge was in a position to observe and weigh the impact of the offending comments on the jury. We cannot say he exceeded his discretion when he found the argument deprived the city of a fair trial.

■ The only other issue before this court is the city's claim concerning another comment made by plaintiff's lawyer during final argument. The issue was raised in the city's post-trial motion and in its brief before this court. We are required to consider it. 134 Ill. 2d R. 306(a).

During rebuttal argument, counsel talked about the city's failure to produce another police officer in its effort to prove Bill O'Connell was intoxicated. Counsel persisted in the argument despite four sustained objections. No missing witness instruction (Illinois Pattern Jury Instructions, Civil, No. 5.01 (3d ed. 1989)) had been requested.

There was no evidence that the absent police officer still was on the force or that he had anything relevant to say. Further, even if the absent witness were an officer at the time of trial, he would have been considered a public employee, equally available to both parties. *French v. City of Springfield*, 5 Ill. App. 3d 368, 283 N.E.2d 18 (1972); *Compton v. Dundee Township Park District*, 129 Ill. App. 2d 36, 263 N.E.2d 146 (1970).

The argument was improper and was exacerbated by counsel's persistence in the face of sustained objections. We do not say this error, standing alone, would justify the granting of a new trial, but we trust it will not be repeated at a retrial.

## CONCLUSION

For the reasons stated, we affirm the trial judge's decision to grant the city a new trial. On retrial, the holding of the supreme court in *Wagner v. City of Chicago*, 166 Ill. 2d 144, 651 N.E.2d 1120

470

(1995), will apply to any issue of contributory negligence that might arise.

Affirmed.

CAMPBELL, P.J., and BRADEN, J., concur.