2019 IL App (1st) 180420

FIRST DIVISION
June 24, 2019

No. 1-18-0420

IN THE
APPELLATE COURT OF ILLINOIS
FIRST DISTRICT

| | | |
|---|---|---|
| LANISHA BLOCKMON, as Special Administrator of the Estate of Walter Blockmon III, deceased, | ) ) ) | |
| Plaintiff-Appellee, | ) ) | Appeal from the Circuit Court of |
| v. | ) ) | Cook County |
| JAKOBI MCCLELLAN; VECTOR MARKETING CORPORATION, a Pennsylvania corporation; and CUTCO CORPORATION, a Delaware corporation, | ) ) ) ) | No. 14 L 8538 The Honorable Edward S. Harmening, |
| Defendants | ) ) | Judge Presiding. |
| (Vector Marketing Corp. and Cutco Corp., Defendants-Appellants). | ) ) | |

JUSTICE PIERCE delivered the judgment of the court, with opinion.
Presiding Justice Mikva and Justice Walker concurred in the judgment and opinion.

**OPINION**

¶ 1 This appeal arises out of a jury's verdict in favor of plaintiff Lanisha Blockmon, as special administrator of the estate of Walter Blockmon III. On July 11, 2014, Walter was driving on I-80 near the city of Country Club Hills, Illinois, when his vehicle was struck from behind by a vehicle driven by defendant Jakobi McClellan. Walter died from his injuries. Plaintiff ultimately filed a five-count fourth amended complaint in the circuit court of Cook County naming McClellan, Vector Marketing Corp. (Vector), and Cutco Corp. as defendants. Vector

markets, sells, and distributes cutlery and other kitchen equipment manufactured by Cutco. Plaintiff alleged that in July 2014, McClellan was a sales representative for and an agent of Vector and Cutco, and that at the time of the accident, McClellan was traveling between sales calls in his role as a Vector sales representative. McClellan admitted that at the time of the accident he was using the mapping and GPS functions on his cell phone to check the location of his next sales call and to determine how late he was running, and that he was not looking at the road.

¶ 2    At trial, plaintiff pursued theories that Vector and Cutco were directly liable for Walter's death for breaching a duty to train McClellan to not use his cell phone while driving, and were vicariously liable for Walter's death because McClellan was Vector's and Cutco's agent at the time of the accident, as he was en route to a customer's home while acting as a Vector sales representative. The jury returned a general verdict in favor of plaintiff and against McClellan, Vector, and Cutco, and awarded plaintiff $4.7 million in damages. The circuit court denied Vector's and Cutco's posttrial motions for a directed verdict, judgment *n.o.v.*, and for a new trial.

¶ 3    On appeal, Vector and Cutco argue that the circuit court should have entered judgment *n.o.v.* on plaintiff's direct negligence claim because plaintiff failed to prove that Vector or Cutco owed Walter a duty of care and that plaintiff failed to establish proximate cause. Vector and Cutco further argue that the circuit court should have entered judgment *n.o.v.* on plaintiff's vicarious liability claim because the evidence at trial was insufficient to establish that McClellan was Vector's and Cutco's agent at the time of the accident. Alternatively, Vector and Cutco contend that the circuit court should have ordered a new trial because the jury's verdict was against the manifest weight of the evidence, and because the circuit court erred by (1) refusing to submit a proposed special interrogatory to the jury asking whether McClellan was an

independent contractor at the time of the occurrence; (2) refusing to instruct the jury that a written sales representative agreement between McClellan and Vector and Cutco was a relevant factor in determining whether McClellan was an agent of Vector and Cutco; (3) permitting plaintiff to question Vector's legal affairs manager at trial about contracts of adhesion and the doctrine of unconscionability, since the enforceability of the sales representative agreement was not at issue; and (4) permitting plaintiff's counsel to make certain statements during closing argument. We affirm.

¶ 4                                    I. BACKGROUND

¶ 5     The only claims at issue in this appeal are counts I and V of the fourth amended complaint.[1] Count I alleged that Vector and Cutco, through the acts or omissions of their agent McClellan, were negligent by failing to keep a proper lookout, speeding, failing to reduce speed to avoid an accident, traveling too fast for traffic conditions, and using an electronic device while driving, and that the negligent acts or omissions were a proximate cause of Walter's death. Count V alleged that Vector and Cutco provided bonuses and incentives to sales representatives based on the number of sales presentations performed and sales made, and "had a duty to train its [s]ales [r]epresentatives so as to prevent foreseeable harm that would be caused by its incentive structure and the nature of its business." Plaintiff alleged that Vector and Cutco breached that duty and were negligent by "fail[ing] to provide appropriate training with the regard to the use of cellular devices in obtaining route information to sales calls," "fail[ing] to have policies related to the use of cellular devices used for the purpose of accomplishing sales calls," and failing "to provide training to sales representatives to not use their cellular devices while doing sales calls."

---

[1]Count II, which alleged that McClellan was an agent of a joint venture between Vector and Cutco, was dismissed during trial. Counts III and IV were directed at McClellan, who has not appealed any portion of the judgment and is not a party to this appeal.

Plaintiff alleged that Vector's and Cutco's negligent acts or omissions were a proximate cause of Walter's death.

¶ 6    It was undisputed at trial that McClellan was driving his mother's car from an appointment in Naperville to a customer's house in Homewood along I-80, and that he was running 5 to 10 minutes late for a sales appointment. While he was driving at between 67 and 80 miles per hour, he was looking at a map and the GPS on his phone when he looked up and saw Walter's vehicle was stopped immediately in front of him. There was no evidence of any preimpact braking at the scene of the accident.

¶ 7    McClellan testified that in June 2014, he turned 18 years of age and had just graduated from high school. He had no sales experience when he was interviewed and hired by Joshua Dicks, a Vector branch manager working out of an office in Orland Park. McClellan attended a group training session led by Dicks on how to demonstrate Cutco products. Participants were told to dress professionally and were provided with a sales training manual. On June 14, 2014, McClellan electronically signed a sales representative agreement with Vector. The Vector training manual provided tips on how to conduct product demonstrations and how to talk to potential customers. McClellan testified that he could ultimately decide on what methods worked best for him. McClellan was supplied with a Vector Connect web identification and login number for purposes of placing product orders. He was also loaned a Cutco knife sample kit containing Cutco knives, rope, leather, a cutting board, and a velvet cloth. He was told by Vector that he could not sell Cutco products through social media or online sales platforms. McClellan was provided with a desk and a landline phone at the Orland Park branch where he could make calls and schedule demonstrations, although McClellan testified that he ordinarily used his cell phone to make calls and schedule demonstrations. He chose the hours that he worked, set his

own schedule, developed his own customer list, and paid his own taxes. He testified that he generally called in to Vector's Orland Park office once per day. McClellan also testified that he knew before he signed the sales representative agreement that it was dangerous to drive while looking at the GPS on his phone, and the fact that Vector did not tell him to avoid looking at his phone while driving did not cause the accident.

¶ 8    Vector's sales representative agreement contained a voluntary "additional incentive commission program," under which a sales representative could earn $17 for conducting an online or in-person one-on-one sales presentation provided certain criteria were met. The sales representative agreement also provided that a sales representative was an independent contractor and was prohibited from holding themselves out as a Vector or Cutco employee. A sales representative would "not be treated as an employee for federal, state, or local tax purposes nor for unemployment compensation or worker's [*sic*] compensation taxes." A sales representative could "set [their] own schedule and develop [their] own marketing methods in pursuit of sales and profits." Sales representatives had no authority to "incur or create any liability or obligation of any kind in the name of [Vector] *** except in the solicitation of orders for [Cutco's] consumer products." Vector required prior written approval for a sales representative's use of any of Vector's or Cutco's trade names, trademarks, service names, and service marks, and sales representatives were prohibited from using the Vector or Cutco name on any business cards, directories, stationary, advertisements, phone listings, bank accounts, or on any form of social media. Sales representatives were responsible for any loss, theft, or destruction of the sample kit, and were required to return the sample kit if the sales representative terminated the sales representative agreement. Sales representatives could, however, elect to purchase the sample kit at any time. The sales representative could terminate the sales representative agreement by

5

sending written notice to Vector, while Vector could terminate the sales representative agreement for good cause.

¶ 9    Dicks testified that in 2014, he was Vector's Orland Park branch manager. During group training sessions, potential sales representatives were told that they had to find their own customers. Sales representatives could submit orders through the web ID portal, by mail, or over the phone. Sales representatives needed to submit an order once per week in order to maintain an active status. Sales representatives that performed sales presentations submitted reports, and Vector retained the right to contact the people listed on the report to verify whether the sales representative actually performed the presentation. Vector held optional weekly meetings for sales representatives designed to help the sales representatives "learn more so they can sell more." Vector did not provide sales representatives with cars, cell phones, laptops, or e-mail accounts. Dicks testified that sales representatives were encouraged to check in daily, but were not required to. If a sales representative was running late for a customer appointment, it was left to the sales representative's discretion as to how to handle that situation. Dicks testified that at the time of the accident, McClellan "was serving not only his own needs and hopefully making a commission, *** but he was also serving Vector and Cutco." Dicks also testified that the "terms 'independent contractor' and 'agent' are not mutually exclusive," and that a person could be "an independent contractor for tax purposes but also an agent based upon right of control issues."

¶ 10    Mike Muriel testified that he was Vector's central region sales manager. He testified that Cutco set the price of the product. Paul Matheson testified that he was Vector's legal affairs manager. He testified that Vector did not provide any safe driving advice to sale representatives, and did not ban the use of cell phones while a sales representative's vehicle was in motion. Sales representatives were not paid minimum wage or overtime, and did not receive any

unemployment benefits, workers' compensation benefits, or health insurance. Sales representatives were not reimbursed for travel expenses. Matheson testified, over Vector's and Cutco's objection, that a contract of adhesion referred to a standard form contract in which one party sets the terms of the agreement, and the other party has little to no ability to negotiate. Also over Vector's and Cutco's objection, Matheson testified that he had heard of the doctrine of unconscionability, but did not know its definition. Vector would calculate a sales representative's compensation by comparing the number of "qualified presentations" to the number of sales, and the sales representative would receive the greater of the two commissions. For qualified presentations, Vector paid 75%, while the district or branch manager paid the other 25%.

¶ 11    At the close of evidence, Vector and Cutco made an oral motion for a directed verdict on plaintiff's direct negligence claim (count V), asserting that plaintiff failed to present any evidence that Vector's or Cutco's failure to train McClellan to not use his cell phone while driving caused the accident, and that plaintiff failed to present any evidence that Vector or Cutco had any duty to provide any such training to McClellan. The circuit court denied Vector's and Cutco's motion for a directed verdict on count V. Vector and Cutco subsequently made an oral motion for a directed verdict on plaintiff's negligence claims based on vicarious liability (count I), arguing that plaintiff failed to present evidence that McClellan was Vector's or Cutco's agent at the time of the accident. The circuit court denied Vector's and Cutco's motion for a directed verdict on count I. The circuit court also denied Vector's and Cutco's request to submit to the jury a special interrogatory asking if McClellan was an independent contractor at the time of the occurrence.

¶ 12    Defendants did not request a separate verdict on each count. The case was submitted to the jury, which returned a general verdict in favor of plaintiff and against defendants. The jury's verdict form, with the jurors' signatures removed, appears in the record as follows:

**VERDICT FORM A**

We, the jury, find for the plaintiff, Lanisha Blockmon, Special Administrator of the Estate of Walter Blockmon III, deceased, and against the following defendants:

| | Yes | No |
|---|---|---|
| Jakobi McClellan | X | |
| Vector Marketing Corporation | X | |
| Cutco Corporation | X | |

We assess the damages in the sum of $ 4,768,351.47

itemized as follows:

| | |
|---|---|
| Medical/Funeral Expenses | $ 18,351.47 |
| The loss of society of Walter Blockmon III to Walter Blockmon IV and Lanisha Blockmon | $ 2,000,000.00 |
| The grief, sorrow and mental suffering of Walter Blockmon IV and Lanisha Blockmon | $ 2,750,000.00 |
| TOTAL: | $ 4,768,351.47 |

¶ 13    Vector and Cutco filed a timely posttrial motion for judgment *n.o.v.*, or alternatively for a new trial, which the parties briefed and argued. The circuit court entered a written order denying Vector's and Cutco's posttrial motion. Vector and Cutco filed a timely notice of appeal.

¶ 14                                    II. ANALYSIS

¶ 15    Vector and Cutco argue that the circuit court should have entered a directed verdict or judgment *n.o.v.* on plaintiff's wrongful death claim based on direct negligence in count I because plaintiff failed to prove that either Vector or Cutco owed Walter a duty of care, plaintiff failed to establish proximate cause, and the circuit court misapplied the general verdict rule in denying their posttrial motion. Vector and Cutco further argue that the circuit court should have entered a directed verdict or judgment *n.o.v.* on plaintiff's wrongful death claim of negligence based on vicarious liability in count V because the evidence was insufficient to establish that McClellan was Vector's and Cutco's agent at the time of the accident.

¶ 16    Plaintiff asserts, however, that Vector and Cutco failed to properly preserve any challenges to the jury's verdict, and have therefore forfeited all of their appellate arguments. Plaintiff argues that at least two theories of liability against Vector's and Cutco's were submitted to the jury: direct negligence based on a failure to properly train McClellan regarding cell phone use while driving, and vicarious liability based on McClellan acting as an agent for Vector and Cutco. Plaintiff contends that Vector and Cutco knew that two theories of liability were going to be submitted to the jury, and because Vector and Cutco did not submit any special interrogatories to test the jury's general verdict or request separate verdicts on the two separate theories of liability submitted to the jury, this court has no way to determine the basis of the jury's verdict. Plaintiff relies on section 2-1201(d) of the Code of Civil Procedure (Code) (735 ILCS 5/2-1201(d) (West 2016)), and several decisions applying the general verdict rule.

¶ 17    In response, Vector and Cutco argue that if the circuit court erred by denying the motion for directed verdict on the direct liability claim in count V, the direct liability claim would not have gone to the jury, and, at a minimum, Vector and Cutco would have been entitled to the proffered special interrogatory as to whether McClellan was an independent contractor, which they contend would have controlled the verdict on the vicarious liability claim in count I.

¶ 18                                A. General Verdict Rule

¶ 19    Section 2-1201(d) of the Code provides:

> "If several grounds of recovery are pleaded in support of the same claim, whether in the same or different counts, an entire verdict rendered for that claim shall not be set aside or reversed for the reason that any ground is defective, if one or more of the grounds is sufficient to sustain the verdict; nor shall the verdict be set aside or reversed for the reason that the evidence in support of any ground is

9

insufficient to sustain a recovery thereon, unless before the case was submitted to the jury a motion was made to withdraw that ground from the jury on account of insufficient evidence and it appears that the denial of the motion was prejudicial."

*Id.*

¶ 20    Our supreme court has explained, "When there is a general verdict and more than one theory is presented, the verdict will be upheld if there was sufficient evidence to sustain either theory, and the defendant, having failed to request special interrogatories, cannot complain." *Witherell v. Weimer*, 118 Ill. 2d 321, 329 (1987).

¶ 21    Plaintiff's argument that Vector and Cutco forfeited their challenges to the jury's verdict (see *supra* ¶ 16) reflects a misunderstanding of the general verdict rule, and the authority she cites does not require a finding of forfeiture. In *Dillon v. Evanston Hospital*, 199 Ill. 2d 483, 491-92 (2002), our supreme court found that where the plaintiff asserted multiple theories of negligence in her complaint and defendants raised challenges to two of those theories on appeal, the verdict could not be set aside on the bases advanced by the defendants, as there were no challenges to the sufficiency of the evidence on the other theories. But here, Vector and Cutco argue that the circuit court erred by not entering a directed verdict or judgment *n.o.v.* in their favor on counts I and V. In other words, they challenge *all* of the theories of liability on which the jury's verdict might rest. The general verdict rule does not preclude appellate review of a general verdict simply because there are multiple possible bases for the jury's verdict; if that were so, the rule would prevent a defendant that loses at trial from attempting to demonstrate that none of the grounds advanced by plaintiff were sufficient to prove their claims at trial, even if the evidence presented at trial was legally insufficient. The general verdict rule will not insulate a verdict that is not supported by the evidence. Instead, the general verdict rule provides that in the

absence of any indication in the record as to which theory of liability the jury rested its decision on, a defendant may not obtain relief from the jury's verdict if at least one theory of liability would be sufficient to sustain the verdict. *Witherell*, 118 Ill. 2d at 329. We find that Vector and Cutco have not forfeited their appellate challenges to the jury's verdict.

¶ 22    Plaintiff further relies on section 2-1201(d) of the Code to argue that Vector and Cutco forfeited their challenges to the jury's verdict by failing to move to have any of the issues at trial withdrawn from the jury's consideration. Plaintiff argues that Vector and Cutco

> "did not move, ever, to withdraw any of the [c]ounts, much less each of the theories of liability set forth in [c]ount I and [c]ount V, from the jury's consideration due to alleged insufficient evidence. Instead, the corporate defendants moved for a directed verdict in their favor, and later filed a post-trial motion."

¶ 23    Plaintiff's argument, however, offers no explanation as to how defendants' motion for directed verdict at the close of evidence—especially where, if granted, the direct negligence claim in count V would have been withdrawn from the jury's consideration—failed to satisfy section 2-1201(d) of the Code. Vector's and Cutco's oral motion for a directed verdict on count V specifically argued that plaintiff failed to present any evidence to establish that any alleged breach of a duty to train McClellan not to drive while using a cell phone was a proximate cause of the accident, and further argued that plaintiff failed to present any evidence to establish that Vector or Cutco had a duty to train McClellan to not drive while using a cell phone. Additionally, Vector's and Cutco's oral motion for directed verdict on count I specifically argued that plaintiff failed to introduce any evidence to establish an agency relationship between either Vector or Cutco and McClellan. Vector and Cutco preserved their motions for directed verdict

by renewing those motions in their posttrial motion for judgment *n.o.v.* and for a new trial. See 735 ILCS 5/2-1202(a) (West 2016) ("If the court denies [a] motion [for directed verdict] or reserves its ruling thereon, the motion is waived unless the request is renewed in the post-trial motion."). On appeal, Vector and Cutco argue the circuit court's denial of the motions for directed verdict were prejudicial because the evidence at trial was insufficient to prove plaintiff's claims, and the claims should not have been submitted to the jury. The motions for directed verdicts clearly sought to "withdraw [those] ground[s] from the jury on account of insufficient evidence" (*id.* § 2-1201(d)), and we therefore reject plaintiff's argument that Vector and Cutco failed to properly preserve their appellate arguments.

¶ 24     However, where the jury returns a general verdict that was not tested by a special interrogatory, we will uphold the verdict if the evidence was sufficient to sustain either theory of liability. *Witherell*, 118 Ill. 2d at 329. Vector and Cutco's argument that the circuit court should have directed a verdict in their favor on the direct negligence claim ignores the reality that (1) both motions for directed verdict were denied before the case was submitted to the jury, (2) both claims went to the jury, (3) no objection was made to a general verdict form, and (4) no request was made for separate verdict forms for each count. This confluence of events resulted in the jury to returning a general verdict. Had Vector and Cutco requested separate verdict forms and the jury returned separate verdicts on counts I and V, this court and the parties would have a better sense of the basis for the jury's reasoning for its verdict. Without separate verdict forms, however, we are presented with a general verdict that we may sustain so long as there was sufficient evidence to sustain one of the two theories of liability submitted to the jury.

¶ 25                      B. Vicarious Liability

¶ 26     We first address whether the circuit court correctly denied Vector's and Cutco's motions for judgment *n.o.v.* or, alternatively, for a new a trial with respect to plaintiff's vicarious liability claim in count I. Vector and Cutco argue that there was no evidence presented to the jury that would support a finding that McClellan was an agent of Vector and Cutco at the time of the accident, and that the evidence clearly showed that McClellan was an independent contractor. We find that the evidence at trial demonstrated a substantial factual dispute regarding whether an agency relationship existed, and therefore affirm the circuit court's denial of Vector's and Cutco's motion for judgment *n.o.v.* and motion for a new trial on count I.

¶ 27     Judgment *n.o.v.* " 'should not be entered unless the evidence, when viewed in the light most favorable to the opponent, so overwhelming favors the movant that no contrary verdict based on that evidence could ever stand.' " *McClure v. Owens Corning Fiberglas Corp.*, 188 Ill. 2d 102, 132 (1999) (quoting *Holton v. Memorial Hospital*, 176 Ill. 2d 95, 109 (1997)). A court "has no right to enter a judgment *n.o.v.* if there is any evidence, together with reasonable inferences to be drawn therefrom, demonstrating a substantial factual dispute, or where the assessment of credibility of the witnesses or the determination regarding conflicting evidence is decisive to the outcome." *Maple v. Gustafson*, 151 Ill. 2d 445, 454 (1992). We will not substitute our judgment on questions of fact fairly submitted to and decided by the jury where the evidence at trial did not greatly preponderate either way. *McClure*, 188 Ill. 2d at 132. The circuit court's decision on a motion for judgment *n.o.v.* is reviewed *de novo*. *Id.*

¶ 28     A motion for a new trial should only be granted where the jury's verdict is against the manifest weight of the evidence. *York v. Rush-Presbyterian Luke's Medical Center*, 222 Ill. 2d 147, 178-79 (2006). "A verdict is contrary to the manifest weight of the evidence when the

opposite conclusion is clearly evident or when the jury's findings prove to be unreasonable, arbitrary and not based upon any of the evidence." *Id.* at 179. We review the circuit court's decision on a motion for a new trial for an abuse of discretion. *Id.*

¶ 29    In order to prove that Vector and Cutco were vicariously liable for McClellan's acts, plaintiff was required to prove an agency relationship. *Wilson v. Edward Hospital*, 2012 IL 112898, ¶ 18. "The hallmark of agency is the principal's right to control the manner in which the agent performs the work." (Internal quotation marks omitted.) *Magnini v. Centegra Health System*, 2015 IL App (1st) 133451, ¶ 25 (citing *Simich v. Edgewater Beach Apartments Corp.*, 368 Ill. App. 3d 394, 402 (2006)). By contrast, an independent contractor "undertakes to produce a certain result but is not controlled as to the method in which he obtains that result." *Lang v. Silva*, 306 Ill. App. 3d 960, 972 (1999). Several factors should be considered when determining whether a person is an agent or an independent contractor, including "the right to control the manner in which the work is performed; the right to discharge; the method of payment; whether taxes are deducted from the payment; the level of skill required to perform the work; and the furnishing of the necessary tools, materials, or equipment." *Id.* "No single factor is determinative but the right to control the manner in which the work is performed is considered to be the predominant factor." *Id.* Plaintiff bears the burden of proving the existence of an agency relationship and the scope of the agent's authority. *Krickl v. Girl Scouts, Illinois Crossroads Council, Inc.*, 402 Ill. App. 3d 1, 5 (2010).

¶ 30    Vector and Cutco argue that plaintiff did not introduce any evidence that Vector and Cutco "controlled the specific means and manner by which [McClellan] conducted [his] day-to-day activities." Instead, they argue that the evidence at trial showed that McClellan controlled (1) the manner in which he did his work; (2) the number of hours that he worked; (3) setting his

own schedule; (4) which methods he used for conducting sales, and could choose whether to follow the sales tips that were included in the training manual; and (5) whether he would do product demonstrations in-person or on-line. Vector and Cutco also argue that McClellan (1) provided his own car, gas, and cell phone; (2) was not required to attend weekly meetings; (3) was not required to check in daily with the office; (4) was not required to work out of the office space that was available; (5) could either borrow or purchase a sample kit; (6) submitted weekly reports to keep track of his commissions; and (7) paid his own taxes. Furthermore, the sales representative agreement stated that McClellan (1) could not represent himself to others as an employee; (2) was an independent contractor; (3) would not be treated as an employee for purposes of unemployment compensation, workers' compensation, or taxes; (4) could terminate the agreement at any time upon written notice; and (5) had the right to set his own schedule and develop his own marketing methods, with some exceptions.

¶ 31    Plaintiff responds that the jury heard evidence from which it could find the existence of an agency relationship. Specifically, McClellan himself testified that he considered himself an employee. Dicks testified that Vector and Cutco had the right to control whether sales representatives could make sales over the internet. The training manual contained a script for handling "knee-jerk reactions" from customers. McClellan testified that each sales presentation took about one hour and was to be performed in accordance with the way he was trained and with the manual, which included a "build a rapport" section, regardless of whether the sales representative personally knew the customer. McClellan was required to have the customer cut food during the demonstration. He was instructed to call his sales manager if he was having trouble closing a sale or to obtain authority to offer a reward for large purchases. Furthermore, Vector and Cutco (1) had control over whether its sales representatives could use business cards

with Vector's or Cutco's names; (2) controlled the price of the products; (3) expected regular contact between sales representatives and the sales manager; and (4) provided office space to sales representatives to make sales calls. The jury also heard Dicks's testimony that McClellan "was serving not only his own needs and hopefully making a commission, *** but he was also serving Vector and Cutco," and that a person might be acting as an independent contractor and an agent at the time.

¶ 32    Based on the foregoing, it is clear that plaintiff presented some evidence demonstrating a substantial factual dispute as to whether Vector and Cutco had the right to control McClellan's work. The jury heard evidence that Vector and Cutco required sales representatives to conduct sales presentations and product demonstrations in a particular manner, restricted sales presentations to either in-person or online, prohibited the marketing of products through online selling platforms, and either lent or sold the sample product kits to sales representatives like McClellan. Viewing all of the evidence in a light most favorable to plaintiff, the circuit court did not err when it denied Vector and Cutco's motion for judgment *n.o.v.* on the vicarious liability claim in count I. We therefore affirm the circuit court's order denying Vector's and Cutco's posttrial motion for judgment *n.o.v.* Furthermore, given that there was evidence presented from which reasonable jurors might reach different conclusions on the issue of agency, we cannot say that the circuit court abused its discretion when it denied Vector and Cutco's posttrial motion for a new trial.

¶ 33    Because there was sufficient evidence from which a jury could conclude that an agency relationship existed, we find that the evidence was sufficient to sustain the general verdict and we need not address Vector's and Cutco's arguments that the evidence at trial was insufficient to find Vector and Cutco directly liable for Walter's death.

¶ 34                            C. Special Interrogatory

¶ 35    Furthermore, we find no error in the circuit court's refusal to submit to the jury a special interrogatory asking whether McClellan was an independent contractor at the time of the occurrence. "A special interrogatory serves 'as guardian of the integrity of a general verdict in a civil trial.' " *Simmons v. Garces*, 198 Ill. 2d 541, 555 (2002) (quoting *O'Connell v. City of Chicago*, 285 Ill. App. 3d 459, 460 (1996)). "A special interrogatory is in proper form if (1) it relates to an ultimate issue of fact upon which the rights of the parties depend, and (2) an answer responsive thereto is inconsistent with some general verdict that might be returned." *Id.* "If a special interrogatory does not cover all the issues submitted to the jury and a 'reasonable hypothesis' exists that allows the special finding to be construed consistently with the general verdict, they are not 'absolutely irreconcilable' and the special finding will not control." *Id.* We review a circuit court's decision on whether to give a special interrogatory *de novo*. *Stanphill v. Ortberg*, 2018 IL 122974, ¶ 31; 735 ILCS 5/2-1108 (West 2016) ("Submitting or refusing to submit a question of fact to the jury may be reviewed on appeal, as a ruling on a question of law.").

¶ 36    Here, Vector's and Cutco's proposed special interrogatory only asked whether McClellan was an independent contractor at the time of the occurrence. But the jury was presented with two theories of liability: that Vector and Cutco were vicariously liable for McClellan's conduct because he was an agent, and that Vector and Cutco were directly liable for their failure to train McClellan. Therefore, if the jury's answer to the proposed special interrogatory was "yes"— meaning McClellan was an independent contractor—then the general verdict would be wholly untested; an answer of "yes" to the special interrogatory would not in any way be inconsistent with the general verdict because a finding that he was an independent contractor would not be

inconsistent with a finding that Vector's and Cutco's negligence was a proximate cause of Walter's death. The circuit court did not err by refusing to give the proposed special interrogatory.[2]

¶ 37                    D. Vector's and Cutco's Remaining Arguments

¶ 38    Finally, we address Vector's and Cutco's arguments that they are entitled to a new trial based on three trial errors that "separately and combined" denied them a fair trial. First, they contend that the circuit court abused its discretion by refusing to give a modified version of Illinois Pattern Jury Instruction, Civil, No. 50.10 (2006) (IPI Civil (2006)), which Vector and Cutco requested be modified to specifically reference the written sales representative agreement. Second, they contend that the circuit court acknowledged that it erred by permitting plaintiff to question Vector's legal affairs manager at trial about contracts of adhesion and the doctrine of unconscionability, but that the circuit court erred when it determined that the error was harmless. Finally, Vector and Cutco argue that plaintiff's counsel made statements during closing argument that deprived Vector and Cutco of a fair trial. We do not find that any of Vector and Cutco's arguments warrant a new trial.

¶ 39                              1. Jury Instruction

¶ 40    Vector and Cutco contend that the circuit court abused its discretion when it refused to give a modified version of IPI Civil (2006) No. 50.10. They contend that the written sales representative agreement was a relevant factor for the jury to consider when determining whether McClellan was an agent or an independent contractor, and that the circuit court's refusal to modify the pattern instruction to specifically reference the written sales representative agreement was prejudicial.

_____

[2]Because we conclude that the special interrogatory was not in proper form, we need not address the arguments presented by the parties as to whether an independent contractor may simultaneously be an agent.

18

¶ 41   "[T]he parties are entitled to have the jury instructed on the issues presented, the principles of law to be applied, and the necessary facts to be proved to support its verdict." *Dillon*, 199 Ill. 2d at 505. A circuit court's decision on whether to give a particular jury instruction is reviewed for an abuse of discretion. *Id.* To determine whether an abuse of discretion has occurred, we look to "whether, taken as a whole, the instructions are sufficiently clear so as not to mislead and whether they fairly and correctly state the law." *Id.* "A reviewing court ordinarily will not reverse a trial court for giving faulty instructions unless they clearly misled the jury and resulted in prejudice to the appellant." *Schultz v. Northeast Illinois Regional Commuter R.R. Corp.*, 201 Ill. 2d 260, 274 (2002).

¶ 42   The fourth paragraph of IPI Civil (2006) 50.10 instructs the jury

> "In determining whether at the time of the occurrence [alleged agent's name] was the agent of the defendant [defendant's name] or was an independent contractor, you may also consider [the method of payment;] [the right to discharge;] [the skill required in the work to be done;] [who provides tools, materials or equipment;] [whether the worker's occupation is related to that of the employer;] [whether the employer deducted for withholding tax;] [and] [[other relevant factor(s)]."[3]

Vector and Cutco requested that the circuit court replace the bracketed phrase "other relevant factor(s)" with the phrase "the designation in the written agreement." The circuit court refused, and instead simply retained the bracketed language "other relevant factors."

¶ 43   Vector and Cutco argue that the Notes on Use for IPI Civil (2006) 50.10 specifically state "[o]nly such elements of the bracketed material in the fourth paragraph should be used as may be

---

[3]All of the brackets appear in the pattern instruction. The last line of the fourth paragraph of the pattern instruction contains a typographical error, as it places two opening brackets before the word "other" and only one closing bracket following the word "factor(s)".

supported by the evidence. See *Wenholdt v. Industrial Comm'n*, 95 Ill. 2d 76, 447 N.E.2d 404, 69 Ill. Dec. 187 (1983)." They contend, therefore, that the circuit court should have modified the instruction to include a reference to the written sales representative agreement, as it was a relevant factor for the jury to consider.

¶ 44    We find no abuse of discretion. Vector and Cutco make no argument that the instruction as given was misleading or whether it fairly and correctly stated the law, or that it was a *per se* abuse of the circuit court's discretion to refuse to include a particular factor in the instruction. The written agreement was discussed extensively at trial and was repeatedly referenced in the parties' closing arguments. The circuit court was not obligated to specifically instruct the jury to consider one piece of evidence that was potentially favorable to Vector and Cutco. Instead, the circuit court instructed the jury to consider specific factors and all of the evidence in deciding whether McClellan was an agent or whether an independent contractor agency relationship existed. Furthermore, Vector and Cutco simply assert that they were prejudiced by the circuit court's decision, but develop no argument as to how that might be so. The circuit court did not abuse its discretion by refusing to modify the pattern instruction.

¶ 45                                   2. Trial Questions

¶ 46    Vector and Cutco argue that they were prejudiced by the circuit court's decision to overrule objections to plaintiff's questioning of Matheson about whether he had heard of contracts of adhesion and the doctrine of unconscionability. Matheson testified that he was familiar with contracts of adhesion, and agreed "that a contract of adhesion is a contract between two parties where the terms are set by one of the parties and the other has little or no ability to negotiate more favorable terms." Vector and Cutco argue that plaintiff's line of questioning was

prejudicial because "it invited the jury to disregard the agreement that McClellan signed as a contract of adhesion and unenforceable."

¶ 47    "[A] party is not entitled to a new trial unless a trial court's erroneous evidentiary ruling was substantially prejudicial and affected the outcome of the trial." *DiCosolo v. Janssen Pharmaceuticals, Inc.*, 2011 IL App (1st) 093562, ¶ 40 (citing *Simmons*, 198 Ill. 2d at 566-67). Vector and Cutco bear the burden of establishing prejudice and that the error affected the outcome of the trial. *Id.*

¶ 48    Vector's and Cutco's prejudice argument is unpersuasive. There is nothing in the record to suggest that the jury disregarded the written sales representative agreement. The jury heard extensive testimony about the contents of the sales representative agreement, and extensive testimony about the relationship of McClellan to Vector and Cutco. Whether McClellan was Vector's and Cutco's agent or whether he was an independent contractor was a main focus of the trial, and the jury heard competing evidence on the factors that bore directly on that issue, including the sales agreement. See *supra* ¶¶ 30-31. During their closing arguments, the parties' counsel extensively discussed the sales representative agreement. Plaintiff's counsel did not urge the jury to find that the sales representative agreement was unconscionable or argue that the sales representative agreement's use of the term "independent contractor" should be given less weight because the sales representative agreement was a contract of adhesion. We find that Vector and Cutco have not identified any substantial prejudice that resulted from plaintiff's line of questioning, and we conclude that any error in admitting the testimony was harmless.

¶ 49                          c. Closing Arguments

¶ 50    Finally, Vector and Cutco argue that they were deprived of a fair trial based on the following statements made by plaintiff's counsel during closing argument:

21

"MR. NAPLETON [(PLAINTIFF'S COUNSEL)]: You know, folks, a jury trial's all about communication. The judge talks, we talk, witnesses talk, and you sit there and listen. Believe me when you come out of that jury room with your verdict, you're going to get your chance to talk. What will you say with your verdict? Are you going to let Vector get away with this shell game and perpetrate a fraud on the public?

MR. AESCHLIMAN [(DEFENSE COUNSEL)]: Objection. Improper, your Honor.

THE COURT: The objection's sustained. The jury will disregard that.

MR. NAPLETON: Are you going to let Vector get away with what happened here in the relationship they had with this man, or are you going to tell them, 'We're drawing the line to prevent another injustice'—

MR. AESCHLIMAN: Objection. Improper, your Honor.

THE COURT: The objection's sustained. The jury will disregard this. You're only to resolve the issues in this case, and no other cases, or no future cases.

MR. NAPLETON: Folks, your verdict's going to be heard loud and clear coast to coast. From Cook County Illinois all the way to the president's office in Olean, New York. It's not right. It's not fair to leave Jacobi McClellan all by his lonesome to pick up this debt that's due and owing this family.

MR. AESCHLIMAN: Objection, judge. Improper.

THE COURT: The objection's sustained. The jury will disregard that."

¶ 51    Vector and Cutco contend that plaintiff's counsel's arguments were inflammatory and prejudicial, that he was asking the jury to "send a message," and that he persisted in making such statements even after the circuit court sustained an objection to his comment about letting Vector "get away with this shell game and perpetrate a fraud on the public."

¶ 52    Plaintiff's appellate brief does not defend the propriety of her counsel's statements, but instead argues that the circuit court sustained all of Vector's and Cutco's objections and gave the jury curative instructions to disregard the comments. Plaintiff also argues that the jury was instructed that the opening and closing arguments of counsel are not evidence. Plaintiff also argues, without offering any citation to authority, that "[i]f any of these comments were so inflammatory at the time they were made, [Vector and Cutco] had an obligation to move contemporaneously with their objection for a mistrial," and that the failure to request a mistrial results in forfeiture. Plaintiff's mistrial argument, however, merits no further consideration, as plaintiff has not established that the failure to request a mistrial categorically precludes a request for a new trial.

¶ 53    It is axiomatic that a jury must decide the case before it based on the evidence presented at trial, and not based on an attorney's appeal to the jurors' emotions. "Questions as to the prejudicial effect of remarks made during opening statement and closing argument are within the discretion of the trial court, and determinations as to such questions will not be overturned absent a clear abuse of discretion." *Simmons*, 198 Ill. 2d at 568.

¶ 54    We find that Vector and Cutco have not established substantial prejudice arising from plaintiff's counsel's improper comments. First, the circuit court properly instructed the jury that remarks made by counsel during opening and closing arguments are not evidence. Second, the circuit court promptly and properly gave a curative instruction to the jury to disregard the

23

improper comments. See *Willaby v. Bendersky*, 383 Ill. App. 3d 853, 862 (2008) ("Where the trial court sustains a timely objection and instructs the jury to disregard the improper comment, the court sufficiently cures any prejudice."). There is nothing in the record on appeal that might suggest that the jury failed to follow the trial judge's curative instructions, or that the jury found these statements to be persuasive. We cannot find that, given the length of the trial and extensive arguments given by all of the attorneys in this case, the jury was influenced by plaintiff's counsel's improper comments resulting in any substantial prejudice to Vector and Cutco. We therefore have no basis from which to conclude that plaintiff's counsel's statements resulted in any prejudice.

¶ 55     Finally, we are not persuaded that the cumulative effect of any of the alleged errors deprived Vector and Cutco of a fair trial.

¶ 56                                    III. CONCLUSION

¶ 57     For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed.

¶ 58     Affirmed.